Exhibit A.

Under Seal

Exhibit B.

# Under Seal

Exhibit C.

# Under Seal

# Exhibit D.

# Under Seal

# Exhibit E.

**University of Connecticut**
*Responsibilities of Community Life: The Student Code*

**"We never educate directly, but indirectly by means of the environment. Whether we permit chance environments to do the work, or whether we design environments for the purpose makes a great difference." (John Dewey 1933, p. 22).**

**Preamble**

Admission to the University of Connecticut means acceptance into a new and special kind of community - an academic community. With acceptance comes a responsibility to uphold and build upon the values and the traditions that have served to define and to strengthen this community over time. New students are welcomed as partners in a fellowship of learning and personal growth. Membership in the University of Connecticut academic community should be considered a privilege and an honor by those students who are invited to join.

The "spirit of inquiry" lies at the heart of our community. It is the realization that the act of learning is essential to personal growth. The desire to know and the willingness to explore require the strength to resist the false promises of shortcuts and substitutes in the process of learning. The spirit of inquiry is the passion and the patience to commit oneself to a continual journey toward understanding.

Incorporating the spirit of inquiry into one's life as a student is not easy. It calls for curiosity, stamina, vulnerability, honesty, grace, courage, and integrity. A student needs to look beyond comfortable assumptions in search of new perspectives and seek the very information that might change one's mind. To adopt the spirit of inquiry is to consciously decide to explore opportunities that may be hidden in contradictions. Facing the unfamiliar, making decisions on the value as well as on the meaning of new information, reflecting on the "how" and the "why" of personal choices, and accepting responsibility for one's actions are all part of this process.

The spirit of inquiry can only flourish in an environment of mutual trust and respect, and that environment cannot be limited to the classroom or to the lab. Each member of the community must have the opportunity to participate fully in the process of learning and understanding if the community as a whole is to remain strong and vital. Therefore, all members must accept responsibility for creating an environment that promotes individual growth and builds community through the safe, respectful exchange of diverse thought, opinion, and feeling.

Unfortunately, a few students may abuse the freedom inherent in such an environment. Students who breach the trust that has been extended to them by the University community shall be held accountable for their actions. *Responsibilities of Community Life: The Student Code* describes the process for addressing such matters. It rests on the principles of individual development, community involvement, and fairness. Therefore, whenever appropriate, it encourages alternative methods of dispute resolution.

**Introduction**

The University of Connecticut seeks to balance the needs and the rights of the individual with the welfare of the community as a whole. Students are expected to conduct themselves in a manner that is consistent with the values embraced by the University community and reflected in its various policies, contracts, rules and regulations, including those contained herein.

This document is intended to describe the types of acts that are not acceptable in an academic community as well as the general process by which they will be addressed (including the types of sanctions that may be imposed). Procedural rules consistent with the provisions of this code will be developed as necessary from time to time so that fundamental fairness may prevail.

Students do not lose their rights as citizens of or visitors in this country when they become members of the University community. Conversely, they do not shed their responsibilities. For example, the University supports a student's freedom of expression and expects that freedom to be exercised by the student in a manner that does not violate the law or University policy.

Maintaining a balance between the individual and the community is a continual process that requires insight, sensitivity, and diligence on the part of each member of the University. Students are encouraged to become involved in University programs and services that promote this effort. For more information on these and other opportunities, please contact Community Standards.

**Part I: Student Conduct Authority**

The University of Connecticut *Responsibilities of Community Life: The Student Code* (*The Student Code*) was approved by the Board of Trustees on April 11, 2000. It is administered under the direction of the Vice President for Student Affairs. The Vice President for Student Affairs shall coordinate recommendations from members of the University community regarding suggested revisions to *The Student Code*, and shall present proposed substantive changes to the Student Life Committee of the Board of Trustees for consideration by the full Board.

**Part II: Definitions**

The following selected terms are defined in an effort to facilitate a more thorough understanding of *The Student Code*. This list is not intended to be a complete list of all the terms referenced in *The Student Code* that might require interpretation or clarification. The Director of Community Standards shall make the final determination on the definition of any term found in *The Student Code*.

1. **"Administrative hearing officer" or "hearing body"** means a University staff member who is authorized to conduct an administrative hearing to determine the appropriate resolution of an alleged violation of *The Student Code*, and/or to impose sanctions or affect other remedies as appropriate.

2. **"Appellate body"** means any person or persons authorized by the Vice President for Student Affairs or designee to conduct a review of a decision reached by a hearing body.

3. **"Business day"** means any day, Monday through Friday, that the University is open.

4. **"Complainant"** means any person who believes that said person has been a victim of another student's misconduct. If the complainant is a University of Connecticut student, that student will have the same rights under *The Student Code* as are provided to the respondent, even if another member of the University community referred or reported the allegation itself.

5. **"Designee"** refers to a staff or faculty member who has responsibility for implementing the student conduct process or administering the student conduct system, in part or in whole.

6. **"Director of Community Standards"** refers to that person in Student Affairs, designated by the Vice President for Student Affairs to be responsible for the overall coordination of the University student conduct system, including the development of policies, procedures, and education and training programs. The Director of Community Standards may serve as an administrative hearing officer, student conduct officer, and/or an appellate body. As used in this document, "Director of Community Standards" includes the Director's designee.

7. **"Hearing board/Committee advisor"** means a Community Standards staff member, administrative hearing officer, or student conduct officer who observes a hearing body or the Probation Review Committee throughout the hearing/meeting and during the hearing body's/committee's private deliberations for the purpose of providing information and interpretations relative to the University student conduct system and *The Student Code*.

8. **"Incident database"** means the electronic database used to track an incident and the response taken.

9. **"Instructor"** means any faculty member, teaching assistant, or any other person authorized by the University to provide educational services (e.g., teaching, research, or academic advising).

10. **"May"** is used in the permissive sense.

11. **"Member of the University community"** includes any person who is a student, instructor, faculty member, or University staff member; any other person working for the University, either directly or indirectly (e.g., private enterprise on campus); or any person who resides on University premises. A person's status in a particular situation shall be determined by the Director of Community Standards.

12. **"Policy"** is defined as the written regulations, standards, and student conduct expectations adopted by the University and found in, but not limited to, *The Student Code*; *The On-Campus Housing Contract*; the *University of Connecticut Policy Against Discrimination, Harassment, and Related Interpersonal Violence*; graduate and undergraduate student catalog; and other publicized University notices.

13. **"Probation Review Committee"** shall review University Probation removal petitions upon the request of a student or registered student organization at least six months after the student is placed on University Probation. The Probation

Review Committee shall typically consist of at least two University community members. Generally, a Probation Review Committee shall have an advisor. Probation Review Committees do not conduct hearings of alleged violations.

14. **"Referring party"** means any person who submits an allegation that a student violated *The Student Code*.

15. **"Report"** means any allegation of alleged misconduct against a student or student organization. "Report" is used interchangeably with "complaint" in this document.

16. **"Respondent"** means any student accused of violating *The Student Code*.

17. **"Shall"** and **"Will"** are used in the imperative sense.

18. **"Student"** means any person admitted, registered, enrolled, or attending any University course or University conducted program; any person admitted to the University who is on University premises or University-related premises for any purpose pertaining to the person's registration or enrollment. For purposes of *The Student Code's* jurisdiction, the Director of Community Standards will make any final determination as to whether or not an individual is a student.

19. **"Student conduct file"** means the printed/written/electronic file, which may include, but is not limited to, incident report(s), correspondence, academic transcript, witness statements, and student conduct history.

20. **"Student conduct officer", "investigating student conduct officer", or "investigator"** means a University staff member who is authorized to investigate and determine the appropriate resolution of an alleged violation of *The Student Code*. Subject to the provisions in this code, this individual is vested with the authority to, among other duties, investigate an alleged violation of *The Student Code*; decline to pursue a complaint; refer identified disputants to mediation or other appropriate resources; establish *The Student Code* alleged violations regarding a respondent; approve a case resolution form; and impose sanctions or affect other remedies as appropriate.

21. **"Student organization"** means an association or group of persons that has complied with the formal requirements for University recognition by the Department of Student Activities.

22. **"Support person"** means any person who accompanies a respondent or complainant for the limited purpose of providing support and guidance. A support person may not directly address the hearing body, student conduct officer(s), question witnesses, or otherwise actively participate in the student conduct process, including hearings.

23. **"University"** and **"UConn"** mean the University of Connecticut.

24. **"University official"** includes any person employed by the University to perform administrative, instructional, or professional duties.

25. **"University premises"** includes all land, buildings, facilities, and other property in the possession of or owned, used, or controlled by the University, either solely or in conjunction with another entity.

26. **"Witness"** means any individual who has direct knowledge of an incident. Character witnesses are not part of the student conduct process.

## Part III: Proscribed Conduct

*The Student Code* applies to students and to their registered organizations. Unless otherwise noted, use of the term "student" in this document shall apply to the student as an individual and to a registered student organization as a single entity, as applicable. Registered student organizations may be held accountable through Department of Student Activities' policies and/or *The Student Code*. The officers or the leaders of a particular registered student organization usually will be expected to represent the organization during the student conduct process. Nothing in this code shall preclude holding certain members of an organization accountable for their individual acts committed in the context of or in association with the organization's alleged violation of *The Student Code*.

Individual accountability is a cornerstone of *The Student Code*. Normally, the influence of drugs and/or alcohol on a student's judgment or behavior will not be accepted as a mitigating factor with respect to the resolution of an act of misconduct.

## A.  Jurisdiction of the University

1. Each student shall be responsible for one's conduct from the time of admission through the actual awarding of a degree, even though conduct may occur before classes begin or after classes end, as well as during the academic year and during periods between terms of actual enrollment (and even if the conduct is not discovered until after a degree is awarded). *The Student Code* shall apply to a student's conduct even if the student withdraws from the University while a student conduct matter is pending.

2. The University may apply *The Student Code* to students whose misconduct has a direct and distinct adverse impact on the University community, its members, and/or the pursuit of its objectives regardless of where such conduct may occur. The following examples describe the kinds of off-campus acts that might be addressed through the University student conduct system. They are illustrative in intent and they should not be regarded as all-inclusive: driving under the influence of alcohol or drugs; physical/sexual assault; sale/distribution of illegal substances; and malicious destruction of property. Should the Director of Community Standards reasonably determine that a particular alleged act of off-campus misconduct falls within the jurisdiction of the University, the case will be referred to the University student conduct system.

3. University student conduct proceedings may be instituted against a student without regard to the pendency of civil or criminal litigation in court or criminal arrest and prosecution resulting from the same or related conduct. Proceedings under *The Student Code* may be carried out prior to, simultaneously with, or following civil or criminal proceedings off-campus at the discretion of the Director of Community Standards. Determinations made or sanctions imposed under *The Student Code* shall not be subject to change because criminal charges arising out of the same facts giving rise to violation of University rules were dismissed, reduced, or resolved in favor of or against the defendant in the criminal matter.

## B.  Conduct Rules and Regulations

As members of the University community, students have an obligation to uphold *The Student Code* as well as to obey federal, state, and local laws. The Director of Community Standards shall make the final determination on what constitutes a potential violation of *The Student Code* and shall establish the specific behavioral violation(s) as appropriate.

The following list of behaviors is intended to represent the types of acts that constitute violations of *The Student Code*. Although the list is extensive, it should not be regarded as all-inclusive. All community members are responsible for knowing and observing all University policies and procedures.

1. Violation of the *Academic Integrity in Undergraduate Education and Research* policy (Appendix A).

2. Disruptive behavior, which is defined as participating in or inciting others to participate in the disruption or obstruction of any University activity, including, but not limited to: teaching, research, events, administration, student conduct proceedings, the living/learning environment, or other University activities, on or off-campus; or of other non-University activities when the conduct occurs on University premises; or of the living environment, on or off-campus.

3. Harming behavior, which includes, but is not limited to, the true threat of or actual physical assault or abuse and also includes harassment. For the purposes of *The Student Code,* bullying is considered a form of harassment.

    Harassment is the severe or repeated use by one or more students of a written, verbal, or electronic expression, or a physical act or gesture, or any combination thereof, directed at another individual that has the effect of: causing physical or emotional harm to the individual or damage to the individual's property; placing the individual in reasonable fear of harm to the individual and/or the individual's property; or infringing on the rights of other University community members to fully participate in the programs, activities, and mission of the University.

    Bullying means the repeated use of a written, oral or electronic communication, or a physical act or gesture by one or more individuals, repeatedly directed at another individual that: (i) causes physical or emotional harm or damage to property, (ii) places the target of such behavior in reasonable fear of harm to self, or of damage to property, (iii) creates a hostile environment or otherwise infringes on the rights of such individual or (iv) substantially disrupts the education process. Bullying shall include, but not be limited to, a written, oral or electronic communication or physical act or gesture based on any actual or perceived differentiating characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity or expression, socioeconomic status, academic status, physical appearance, or mental, physical, developmental or sensory

disability, or by association with an individual or group who has or is perceived to have one or more of such characteristics.

In determining whether an act constitutes harassment, Community Standards will consider the full context of the conduct, giving due consideration to the protection of University climate, individual rights, freedom of speech, academic freedom and advocacy. Not every act that might be offensive to an individual or a group constitutes harassment and/or a violation of *The Student Code*.

4. Violation of the *University of Connecticut Policy Against Discrimination, Harassment, and Related Interpersonal Violence*.

5. Endangering behavior, which includes, but is not limited to, conduct that threatens or endangers the health or safety of any person including one's self.

6. Hazing, defined as any activity without reasonable or legitimate educational value expected of someone for the purpose of initiation, admission into, affiliation with, or as a condition for continued membership in a group or organization that humiliates, degrades, or risks emotional, psychological, and/or physical harm, regardless of a person's willingness to participate.

7. Misuse of alcohol and/or other drugs including but not limited to:
   a. *Illegal consumption and/or possession.* Possession of alcohol is limited to persons 21 years of age or older. If an individual is under 21 years of age, that person is not permitted to consume alcohol or carry alcohol on their person on or off University property.
   b. *Strength of alcohol.* Any alcohol that is stronger than 80 proof is not permitted on University of Connecticut property except where approved for academic purposes of the University.
   c. *Serving, distributing, and/or obtaining alcohol.* Serving, distributing to, or obtaining alcohol for any individual who is under 21 years of age is prohibited. Allowing any person under the age of 21 to consume alcohol is also prohibited. Providing alcohol to a person who is visibly intoxicated and/or pressuring others to use alcohol is prohibited.
   d. *Public consumption.* No alcohol is to be consumed in public areas and open containers of alcohol are not permitted in public areas on University property except in designated locations where the permittee assumes all liability of properly monitored events. "Public areas" are defined as any area that could be used for general use including, but not limited to, stairways, hallways, lounges, bathrooms, dining halls, arenas, libraries, academic and administration buildings, and outside of buildings on University property.
   e. *Location for consumption.* Alcohol can only be consumed on University of Connecticut property where there is a liquor permit to serve alcohol or as defined by University policies. A consumer can only ingest alcohol at the event location.
   f. *Alcohol procurement.* Alcohol may not be purchased with University funds or Student Trustee Organization funds.
   g. *Tap systems.* No tap systems to administer alcohol may be used on University property except by a licensed permittee.
   h. *Common source containers.* Common source containers containing alcohol are prohibited on University property. This includes, but is not limited to, kegs and beer balls.
   i. *Off-campus functions.* All Registered Student Organizations (RSOs) must participate in the Student Activities Off-Campus Event Advising Process to receive risk management advising. Law School student organizations must assure compliance with the *School of Law Alcohol Policy*.
   j. *Driving under the influence.* Driving under the influence of alcohol and/or drugs is prohibited.
   k. *Illegal drugs and paraphernalia.* Possession and/or consumption of illegal drugs, including marijuana, is prohibited. Possession of drug paraphernalia is prohibited on University of Connecticut property.
   l. *Medications.* Prescription drugs are permitted on University of Connecticut property if accompanied by an authentic medical prescription. Use of legal medication outside the parameters of the medical authorization is prohibited. Possession and/or use of prescription medications not prescribed to the user is prohibited.

   Although Connecticut state law permits the use of medical marijuana, the use, possession, and/or cultivation of marijuana remains a crime under federal law. As a recipient of federal funding, the University is required to prohibit the use and/or possession of all federally controlled substances, including marijuana. Therefore, the possession and use of marijuana in any form, even if

accompanied by an authentic medical prescription, is prohibited on all University property and/or during any University activities.

m. *Selling, distributing, or manufacturing drugs.* The sale, distribution, and/or manufacturing of controlled substances or illegal drugs, including marijuana, except as expressly permitted by law, is prohibited.

8. Use, possession, or distribution of firearms, weapons, facsimile of weapons, fireworks, explosives, or dangerous chemicals.

9. <mark>Uncooperative behavior,</mark> which includes, but is not limited to, uncooperative behavior and/or failure to comply with the directions of, providing false information, and/or failure to identify oneself to University officials or law enforcement officers acting in the performance of their duties.

10. The setting of or participation in unauthorized fires; the unauthorized or improper possession, use, removal, or disabling of fire safety equipment and warning devices; failure to follow standard fire safety procedures; or interference with firefighting equipment or personnel.

11. Assisting another person in the commission, or attempted commission, of a violation of *The Student Code*. This includes hosting a non-student who commits a violation.

12. Violation of published University policies, rules, or regulations.

13. Violation of the *On-Campus Housing Contract*.

14. Theft, which includes, but is not limited to, attempted or actual theft of property or services.

15. Forcible entry and/or unauthorized presence in University-owned buildings or property. Reasonable notice of authority, or lack thereof, shall be given.

16. Unauthorized possession, access, duplication, or misuse of University property or other personal or public property, including, but not limited to, records, electronic files, telecommunications systems, forms of identification, and keys.

17. Damage or misuse of property, which includes, but is not limited to, attempted or actual damage to or misuse of University property or other personal or public property.

18. Violation of federal, state or local law.

19. <mark>Abuse of the University student conduct system, including but not limited to:</mark>
    a. Disruption or interference with the orderly conduct of a student conduct proceeding.
    b. Falsification, distortion, or misrepresentation of information to a student conduct officer or hearing body.
    c. Influencing or attempting to influence another person to commit an abuse of the student conduct system.
    d. Attempting to discourage or retaliate against an individual's proper participation in, or use of, the student conduct system.
    e. Attempting to intimidate or retaliate against a student conduct officer, member of the hearing body or any other participant prior to, during, and/or after a student conduct proceeding.
    f. Institution of a student conduct code proceeding in bad faith.
    g. Failure to comply with the sanction(s) imposed under *The Student Code*.

20. Retaliation against any University community member for raising a good faith concern or issue regarding another community member.

## Part IV: Student Conduct Policies
### A. Allegations
1. Any person may file a report concerning alleged misconduct of any student or registered student organization. Reports shall be prepared in writing, either by the individual reporting the conduct or by the staff member collecting a verbal referral, and directed to the Director of Community Standards. Complaints regarding alleged misconduct by a student or registered student organization at a regional campus shall be directed to the Associate Vice Provost or designee at that campus. A report should be submitted as soon as possible after the alleged misconduct takes place.

2. The Director of Community Standards shall determine if a complaint alleges or addresses a potential violation of *The Student Code* and will notify the respondent of such allegations. The decision to continue a matter through the conduct process is the decision of the Director of Community Standards.

3. Generally, the Director of Community Standards will assign a student conduct officer(s) to the case who will investigate and schedule administrative conferences with the respondent(s) and other individuals as deemed necessary and appropriate.

**B.  Administrative Conferences and Investigations**

1. The administrative conference is a meeting between a respondent and a student conduct officer to review a complaint/incident, explain the student conduct process, and review possible options for resolving the matter. There may be multiple administrative conferences as an incident is investigated.

2. A fair and impartial investigation will be conducted by the student conduct officer. The respondent and complainant, if applicable, may provide information in person and/or submit a written account, provide the names of incident witnesses for possible interviews with the student conduct officer, provide witness statements and any documentation that may be relevant to the facts of the incident. The student conduct officer will make a reasonable effort to obtain supporting documentation regarding the incident from other University entities or other resources.

Upon completion of the investigation, the student conduct officer, applying a preponderance of the evidence standard, will determine if any violations of *The Student Code* occurred.

3. After reviewing the incident and the investigation with the respondent and complainant, if any, the student conduct officer will determine whether the case may be resolved by way of a case resolution form or an administrative hearing. A student who agrees to resolve any violation(s) without an administrative hearing shall have no right to appeal.

4. Either the respondent or the UConn student complainant, if any, may request an administrative hearing. If the resolution will be through an administrative hearing, the UConn student complainant, if any, will have the same rights as the respondent as indicated in *The Student Code*. The student conduct officer or hearing body will, in writing, disclose to the alleged victim of any crime of violence, non-forcible sex offense, or sexual harassment the results of the conduct matter regarding factual determination(s) and sanction(s) that specifically pertain to the alleged victim.

**C.  Administrative Hearing Bodies**

The Director of Community Standards will assign either an administrative hearing officer(s) or an academic misconduct hearing board to conduct an administrative hearing depending on the nature of the matter.

1. **Administrative hearing officers:** The Director of Community Standards designates and trains administrative hearing officers annually. Administrative hearing officers are University officials. They may conduct hearings on any type of alleged violation of *The Student Code*. Administrative hearing officers may impose any sanction as appropriate. Typically, a hearing will consist of one or two administrative hearing officers.

2. **Academic misconduct hearing board:** Academic misconduct hearing boards for undergraduate academic integrity issues shall typically consist of two faculty members, two students, and one hearing advisor. They may conduct hearings on any alleged violation regarding *Academic Integrity in Undergraduate Education and Research* (Appendix A). The board may impose any sanction as appropriate. Academic consequences are determined by the instructor.

**D.  Administrative Hearing**

Generally, an administrative hearing brings several people together in an effort to allow for the full consideration of an allegation that a student has violated *The Student Code*. The hearing participants may include the investigating student conduct officer(s), respondent(s), complainant(s), witnesses, member(s) of the hearing body, a hearing advisor, and a support person for each respondent or complainant.

All participants are expected to be respectful of each other's purpose in the hearing process and to conduct themselves according to the direction of the hearing body. In an effort to be as fair as possible to the respondent and complainant, if applicable, student conduct procedures may be modified. Community Standards may modify the procedures after taking into consideration the support and privacy needs of the parties and/or other potential hearing participants. This

may include, but is not limited to, alteration of the hearing room setup, use of multiple rooms, video-conferencing equipment, or other electronic means.

1. Normally, an administrative hearing will be conducted within fifteen (15) business days of an investigation report being submitted to Community Standards.

2. The respondent and UConn student complainant, if any, shall each have the right to:
   a. Be notified of all alleged violations by means of the address (University e-mail, residence hall address, or permanent address) provided by the student via the Registrar's Office. Typically, this will be done via e-mail, which will provide a link to the documentation.
   b. Review the completed investigation report, which includes all supporting documentation.
   c. Be informed about the hearing process.
   d. A reasonable period of time to prepare for a hearing.
   e. Request a delay of a hearing due to extenuating circumstances. The decision to grant or deny any such request is within the discretion of the hearing body.
   f. Be notified of the proposed information to be presented and to know the identity of witnesses who have been called by the hearing body to speak at the hearing or provide written information for the hearing when such information is known by the Director of Community Standards prior to the hearing.
   g. Be accompanied by a support person during the portions of the hearing in which the student is participating. A student should select a support person whose schedule allows attendance at the scheduled date and time for the administrative hearing because delays will not be allowed due to the scheduling conflicts of a support person.
   h. Be present at the pertinent stages of the hearing process as indicated by the Director of Community Standards. The deliberations of the hearing body are private.
   i. Submit a written response to the investigation report prior to the hearing. The decision to not present information is not an admission of responsibility.
   j. Propose witnesses for the hearing in accordance with procedures outlined below.
   k. Respond to statements and other information presented at the hearing.
   l. Present a personal or community impact statement to the hearing body upon a finding of "In Violation."

3. An administrative hearing shall be conducted by a hearing body in accordance with the procedures listed below. When a University official serves as the sole member of the hearing body, that official may also be referred to as the "hearing body." Specific hearing bodies may adopt additional procedures that are not inconsistent with the provisions of *The Student Code*.
   a. Formal rules of process, procedure, and/or technical rules of evidence, such as are applied in criminal or civil court, are not used in these proceedings.
   b. A hearing shall be conducted in private.
   c. Admission of any person into the hearing room shall be at the discretion of the hearing body. The hearing body shall have the authority to discharge or to remove any person whose presence is deemed unnecessary or obstructive to the proceedings.
   d. When a hearing involves more than one respondent, the Director of Community Standards may, at the Director's discretion, permit the administrative hearings concerning each student to be conducted either separately or jointly.
   e. If a respondent and/or complainant, after receiving notification, does not appear for a hearing, the hearing will proceed without the student(s).
   f. Except as directed by the hearing body, the support person's role in a hearing shall be limited to that of a consultant to the respondent or complainant.
   g. The identity of any witnesses, along with a summary of information expected to be provided by the witness, must be provided to the hearing body at least two business days before the hearing. The hearing body may elect not to permit one or more witnesses to participate in the hearing if the information they are expected to provide is not relevant to any material issue; is deemed unnecessarily redundant of other information already in the record; and/or they were interviewed in connection with the investigation and the information they are expected to provide is already captured in the investigation report. The party proposing a witness is responsible for any communication with the witness regarding attendance at the hearing. The hearing body may request the attendance of witnesses not proposed by the parties. The hearing body cannot compel the attendance of witnesses at the hearing.
   h. The respondent, complainant, investigating student conduct officer, and any witnesses will provide information to and answer questions from the hearing body. Questions may be suggested by the investigating student conduct officer, respondent and/or complainant to be answered by each other or by other witnesses. This will be conducted by the hearing body with such questions directed to the hearing body, rather than to the individuals directly. This method is used to preserve the educational tone of the hearing and to avoid creation of an

adversarial environment. Questions of whether potential information will be received shall be resolved at the discretion of the hearing body.

i. Pertinent records, exhibits, and written statements should be provided during the investigation stage of the process. Any additional information may be accepted for consideration by the hearing body at its discretion as long as such information was provided in accordance with *The Student Code*. Information presented by a student during a hearing that indicates a potential violation of *The Student Code* may be investigated at a future time.

j. The hearing body will review the final investigation report to determine whether the investigation was conducted in a fair, impartial, and reliable manner; the information is sufficient to support the factual findings; and there is a rational basis, applying a preponderance of the evidence standard for the recommended findings regarding a potential violation of *The Student Code*. In conducting this hearing, the hearing body may accept or reject the investigating student conduct officer's findings in whole or in part.

k. When a student respondent has been found "In Violation" of *The Student Code*, the hearing body shall review the student's academic transcript and student conduct history, hear impact statements by the respondent, complainant, and investigating student conduct officer, and impose the appropriate sanction(s). Character references and/or letters of support are not accepted.

l. Following the hearing, the hearing body shall advise the respondent in writing of its determination and of the sanction(s) imposed, if any. The hearing body will disclose to the alleged victim of any crime of violence, non-forcible sex offense, or sexual harassment, the results of the hearing, in writing, regarding factual determination(s) and sanction(s) that specifically pertain to the alleged victim.

m. All procedural questions are subject to the final decision of the hearing body or the hearing board advisor.

4. All administrative hearings will be recorded and the University will maintain the audio recordings as required by Connecticut state law. All such recordings are the property of the University. Participants are prohibited from making their own recording. Upon written request, a respondent or UConn student complainant may review the audio recording and make appropriate arrangements for it to be transcribed on University premises. Arrangements for a transcriber and all associated costs involved in the transcription will be the responsibility of the requesting individual.

## E. Sanctions

1. The following sanctions may be imposed, individually or in various combinations, on any student found to have violated *The Student Code*. Please note this is not an exhaustive list of sanctions:

   a. **Warning:** A notice that the student has violated *The Student Code* and a warning that another violation will likely result in a more severe sanction, which could include University Probation, University Suspension, or University Expulsion.

   b. **University Probation:** University Probation is an indefinite period of time where the student is given the opportunity to modify unacceptable behavior, to complete specific assignments, and to demonstrate a positive contribution to the University community in an effort to regain student privileges within the University community. After six months from being placed on University Probation, the student may apply for a review of the student's probationary status. The student will need to meet with the Probation Review Committee and demonstrate significant contributions, both of an academic and co-curricular nature, to the University community. The Probation Review Committee will determine if the student will continue on University Probation or if the University Probation is lifted. The decision of the committee is final and not subject to appeal. If it is decided that University Probation will continue, the student may re-apply in six months after the committee's decision. Due to the student's conduct history, there is the possibility of University Suspension or University Expulsion if the student is found in violation of *The Student Code* a subsequent time.

   c. **University Suspension:** University Suspension is separation from the University for a designated period of time after which the student shall be eligible to apply for readmission to the University. Readmission to the University is not guaranteed. Conditions for consideration of readmission may be specified. A student's reacceptance into the student's school or college is at the discretion of the school or college. A student who is on suspension is prohibited from participating in any University activity or program. The individual may not be in or on any University owned or leased property without securing prior approval from the Director of Community Standards. A notation of "Suspension" shall be placed on the student's official transcript until graduation. However, the student may petition the Director of Community Standards for earlier removal of the notation upon completion of the suspension. The University of Connecticut will not accept credits earned at another institution during a period of suspension.

   d. **University Expulsion:** University Expulsion is permanent separation from the University. A student who has been expelled is prohibited from participating in any University activity or program. The individual may not be in or on any University owned or leased property. A permanent notation of "Expulsion" shall be placed on the student's transcript.

    e. **Additional Sanctions:** The following may be given in conjunction with any of the above:
- i. **Loss of Privileges:** Denial of specified privileges for a designated period of time.
- ii. **Restitution:** Compensation for loss of or damage to University property or services rendered. This may take the form of appropriate service and/or monetary or material replacement.
- iii. **Removal from Housing:** Separation of the student from University approved housing for a designated period of time after which the student shall be eligible to return. Removal may include loss of dining privileges. At the sole discretion of the student conduct officer or hearing body, this sanction may be deferred to provide the student with a last opportunity to demonstrate that the student can be a positive member of the Residential Life community. If any violation(s) occurs in the residence halls, the sanction would be immediately imposed. If, after two consecutive semesters, the student has had no further issues in the residence halls then the sanction will be considered complete.
- iv. **UConn Compass:** The UConn Compass program has a sanction component, which is designed to promote student engagement through co-curricular involvement. UConn Compass facilitators will assist students in designing a customized involvement plan based on their individual interests and academic plans.
- v. **Educational Initiatives:** Projects; participation in health or safety programs (the student may be required to pay a fee); service to the University or to the larger community; seminars; and other assignments as warranted.

2. The following sanctions may be imposed upon registered student organizations:
   a. Those sanctions listed above in Part IV, E.1.
   b. Any sanction as defined in *Blueprints: A Manual for Registered Student Organizations*.

3. Aggravated Violations: If a student is in violation of *The Student Code* and the behavior was directed toward an individual or group due to race, ethnicity, ancestry, national origin, religion, gender, sexual orientation, gender identity or expression, age, physical or mental disabilities, including learning disabilities, intellectual development disorders, and past/present history of a mental disorder, the student conduct officer or hearing body may enhance the sanctions.

**F.  Appeals**

1. A decision reached through the administrative hearing process may be appealed by the respondent(s) or UConn student complainant(s) to the next level of student conduct authority within five (5) business days of the decision. All findings and/or sanctions are in effect at the conclusion of the administrative hearing and will remain in effect throughout the appeal process. All appeals shall be in writing and shall be delivered to the designated appellate body via the mechanism identified by Community Standards. The decision reached as a result of an administrative conference may not be appealed.

2. Except as required to explain the basis of new information, an appeal shall be limited to a review of the student case file. The audio recording of the administrative hearing shall be available for the appellate body for review as necessary. The review shall be for one or more of the following purposes:
   a. To determine whether the administrative hearing was conducted in conformity with prescribed procedures giving the complainant and investigating student conduct officer a reasonable opportunity to prepare and to present information that *The Student Code* was violated, and giving the respondent a reasonable opportunity to prepare and to present a response to those allegations.
   b. To determine whether the sanction(s) imposed were appropriate for the determined violation(s) of *The Student Code*.
   c. To consider new information, sufficient to alter a decision, or other relevant facts not brought out in the original hearing, because such information and/or facts were not known to the person appealing at the time of the original administrative hearing.

3. If an appeal is granted by the appellate body, the matter shall either be referred to the original hearing body for re-opening of the administrative hearing to allow reconsideration of the original determination or the appellate body will determine any change in sanctions. If an appeal is denied, the matter shall be considered final and binding upon all involved.

**G.  Accommodations for Students with Disabilities**

1. By federal law, a person with a disability is any person who: 1) has a physical or mental impairment; 2) has a record of such impairment; or 3) is regarded as having such an impairment, which substantially limits one or more major life activities such as self-care, walking, seeing, hearing, speaking, breathing, or learning.

2. A student requesting an accommodation in regard to an administrative conference, hearing, or probation review meeting must follow the appropriate process for requesting an accommodation through the Center for Students with Disabilities. The Center for Students with Disabilities will make a determination regarding the request and notify the appropriate parties.

3. Reasonable accommodations depend upon the nature and degree of severity of the documented disability. While the Americans with Disabilities Act of 1990 requires that priority consideration be given to the specific methods requested by the student, it does not imply that a particular accommodation must be granted if it is deemed not reasonable and other suitable techniques are available.

## Part V: Interim Administrative Action

The Vice President for Student Affairs or designee may impose an interim University Suspension, an interim Removal from Housing, an interim Loss of Recognition, and/or other necessary restrictions on a student prior to a student conduct resolution on the student's alleged violation. Such action may be taken when, in the professional judgment of a University official, a threat of imminent harm to persons or property exists.

Interim administrative action is not a sanction. It is taken in an effort to protect the safety and well-being of the respondent, of the complainant, of others, of the University, or of property. Interim administrative action is preliminary in nature; it is in effect only until there is a resolution of the student conduct matter.

## Part VI: Maintenance and Review of Student Conduct Files

Student conduct files are maintained separately from any other academic or official file at the University by the Director of Community Standards. Generally, information from the files is not released without the written consent of the student. However, certain information may be provided to individuals within or outside the University who have a legitimate legal or educational interest in obtaining it. Please refer to the federal Family Educational Rights and Privacy Act of 1974, as amended.

The sanctions of "Suspension" and "Expulsion" will be noted on the student's official transcript. A suspension will be noted until graduation or four (4) years following the end of the period of suspension, whichever occurs first. An expulsion will be noted permanently.

A student conduct file is maintained chronologically by academic year of resolution and then by respondent name. A student may have more than one file. Generally, a student conduct file, including related documents, will be kept for seven (7) years from the date of the incident. This may include electronic and hard copy files. The student conduct file of an expelled student shall be retained indefinitely. Audio recordings of administrative hearings are used for appellate purposes only and are not part of the student conduct file. Audio recordings are generally retained until the end of the appeal process. Information contained in the incident database is maintained for seven (7) years from the date of the incident with the exception of expelled students. That information is retained indefinitely.

## Part VII: Interpretation and Revision

1. Any question of interpretation regarding *The Student Code* shall be referred to the Director of Community Standards for final determination.

2. *The Student Code* shall be reviewed at least every three (3) years under the direction of the Vice President for Student Affairs. Substantive revisions shall be approved by the Board of Trustees.

**Appendix A**
**Academic Integrity in Undergraduate Education and Research**
**[Adopted March 2008]**

*The following policy on undergraduate academic integrity was originally formulated by the University of Connecticut Scholastic Standards Committee. It was adopted by the University Senate on March 31, 2008 and modified by the University Senate in December of 2012.*

This appendix of *The Student Code* describes the types of acts that shall be considered academic misconduct by undergraduates, and it presents the process for resolving complaints of academic misconduct.

**Student Academic Misconduct**

Academic misconduct is dishonest or unethical academic behavior that includes, but is not limited to, misrepresenting mastery in an academic area (e.g., cheating), failing to properly credit information, research, or ideas to their rightful originators or representing such information, research, or ideas as your own (e.g., plagiarism).

**A. Instructor's Role**

1. Instructors shall take reasonable steps to prevent academic misconduct in their courses and to inform students of course-specific requirements.

2. When the instructor of record or designee (instructor) believes that an act of academic misconduct has occurred, the instructor is responsible for saving the evidence in its original form and need not return any of the original papers or other materials to the student. Copies of the student's work and information about other evidence will be provided to the student upon request.

3. When an instructor believes there is sufficient information to demonstrate a case of academic misconduct, the instructor shall notify the student in writing of the allegation of misconduct and the academic consequences that the instructor will impose. The appropriate academic consequence for serious offenses is generally considered to be failure in the course. For offenses regarding small portions of the course work, failure for that portion is suggested with the requirement that the student repeat the work for no credit. The written notification shall also inform the student whether the case has been referred to the Academic Integrity Hearing Board (Board) for consideration of additional sanctions. The instructor shall send the written notification and send a copy to the Office of Community Standards (Community Standards) within five business days of having discovered the alleged misconduct. At the Regional Campuses, a copy shall be sent to the Office of Student Affairs (Regional Campus Student Affairs). Cases that are purely technical in nature, without any perceived intent to achieve academic advantage, may be reported at the discretion of the instructor.

4. In certain cases, the dean of a school or college or designee may become aware of alleged academic misconduct and may bring a complaint forward to the Board.

5. The student has five business days from receipt of the written notice to respond to the instructor and/or to request a hearing (see "Academic Integrity Hearing Board"). If the student does not respond within the allotted time the instructor's sanctions shall be imposed. If the student requests a hearing the instructor shall forward the request to Community Standards or the Regional Campus Student Affairs. If the student and the instructor reach a mutually acceptable resolution of the case, the instructor shall notify Community Standards (or Regional Campus Student Affairs) of the agreement. The instructor shall also notify Community Standards (or Regional Campus Student Affairs) if the instructor withdraws the allegation of misconduct. A student who has been notified about an accusation of academic misconduct may not withdraw from the course in which the alleged misconduct has occurred without the approval of the instructor and the appropriate dean. If a student withdraws from a course during a pending academic misconduct case, any academic sanction imposed will overturn the withdrawal.

6. If a semester concludes before an academic misconduct matter is resolved, the student shall receive a temporary "I" (Incomplete) grade in the course until the instructor submits the appropriate grade.

**B. The Academic Integrity Hearing Board**

1. The Academic Integrity Hearing Board, which is administered by Community Standards, is comprised of two faculty members, two students, and a nonvoting chairperson, all of whom are appointed by the Director of Community Standards. At each Regional Campus, a designee working in conjunction with Community Standards is responsible for the organization and administration of their Academic Integrity Hearing Board. Hearing procedures will be in accordance with the hearing procedures described below. Community Standards will ensure that appropriate dean(s) and faculty are kept informed of the status of misconduct cases in a timely fashion.

2. The respondent or the accusing instructor may refer a case of alleged academic misconduct to Community Standards for it to be adjudicated by the Board. Community Standards will review all academic misconduct cases as they are received to determine if a case needs to be heard by the Board to determine if additional sanctions need to be considered. After receiving written notification of the academic misconduct from the instructor, Community Standards may meet with students to discuss additional sanctions outlined in *The Student Code* to determine if an agreement about additional sanctions can be reached. If an agreement cannot be reached between a student and Community Standards, the case will be heard by the Board.

## C. Hearing on Academic Misconduct

1. An essential component of any academic integrity hearing is the determination and the weighing of the facts that pertain to the allegation(s). Therefore, it is vital that personal statements and other information be presented clearly and factually. All participants are expected to be respectful of each other's purpose in the hearing process and to conduct themselves according to the direction of the Board.

2. Normally, an academic integrity hearing will be conducted within fifteen (15) business days of the respondent being notified of the hearing.

3. The complainant (instructor or designee) and the respondent shall each have the right to:
   a. Be notified of all alleged violations by means of the address (University e-mail, residence hall address, or permanent address) provided by the student via the Registrar's Office. Typically, this will be done via e-mail which will provide a link to the documentation.
   b. Review any written complaint(s) and supporting documents.
   c. Be informed about the hearing process.
   d. A reasonable period of time to prepare for a hearing.
   e. Request a delay of a hearing due to extenuating circumstances. The decision to grant or deny any such request is within the discretion of the hearing body.
   f. Submit a written account, a personal statement regarding the incident and/or any relevant documentation or records. All documentation must be provided by the date established by the non-voting chairperson. Documentation will not be accepted past the established deadline and failure to provide documentation by the established deadline will not be an acceptable reason for an appeal. The decision to not present information is not an admission of responsibility.
   g. Provide the names and contact information of incident witnesses, those who have direct knowledge of the incident, and provide a list of questions for any incident witnesses, including the involved parties. This information must be provided by the date established by the non-voting chairperson. Failure to provide witness information by the established deadline will not be an acceptable reason for an appeal. The non-voting chairperson will make every effort to interview those witnesses with direct knowledge; however, the witness cannot be compelled to speak with the non-voting chairperson.
   h. Be notified of the identity of witnesses who have been called to speak at the hearing or who have been asked to provide additional written information by the Board.
   i. Be accompanied by a support person during the portions of the hearing in which the student is participating. A student should select a support person whose schedule allows attendance at the scheduled date and time for the academic integrity hearing because delays will not be allowed due to the scheduling conflicts of a support person.
   j. Be present at the pertinent stages of the hearing process as indicated by the Director of Community Standards. The deliberations of the hearing body are private.
   k. Present a personal or community impact statement to the hearing body upon a finding of "Responsibility."

4. An academic integrity hearing shall be conducted by the Board in accordance with the procedures listed below:
   a. Formal rules of process, procedure, and/or technical rules of evidence, such as are applied in criminal or civil court, are not used in these proceedings.
   b. A hearing shall be conducted in private.
   c. Admission of any person into the hearing room shall be at the discretion of the Board. The Board shall have the authority to discharge or to remove any person whose presence is deemed unnecessary or obstructive to the proceedings.
   d. When a hearing involves more than one respondent, the Director of Community Standards may, at the Director's discretion, permit the hearings concerning each student to be conducted either separately or jointly.
   e. If a respondent or complainant, after receiving notification, does not appear for a hearing, the hearing will proceed without the absent party.
   f. Except as directed by the chair, the support person shall limit his/her role in a hearing to that of a consultant to the respondent or complainant.
   g. The identity of any witnesses must be provided to the Board at least two business days before the hearing. The Board may elect not to permit one or more witnesses to participate in the hearing if the information they are expected to provide is not relevant to any material issue and is deemed unnecessarily redundant of other information already in the record.

The party proposing a witness is responsible for any communication with the witness regarding attendance at the hearing. The Board may request the attendance of witnesses not proposed by the parties. The Board cannot compel the attendance of witnesses at the hearing.

h. The respondent, complainant, and any witnesses will provide information to and answer questions from the Board. Questions may be suggested by the respondent or complainant to be answered by each other or by other witnesses. This will be conducted by the Board with such questions directed to the Board, rather than to the individuals directly. This method is used to preserve the educational tone of the hearing and to avoid creation of an adversarial environment. Questions of whether potential information will be received shall be resolved at the discretion of the chair.

i. Any additional information may be accepted for consideration by the hearing body at its discretion as long as such information was provided in accordance with *The Student Code*. Information presented by a student during a hearing that indicates a potential violation of *The Student Code* may be investigated at a future time.

j. The Board shall determine whether the respondent has violated the *Academic Integrity in Undergraduate Education and Research Policy*. The Board's determination shall be made on the basis of whether it is more likely than not that the respondent violated the policy.

k. When a respondent has been found "In Violation," the Board shall examine the student's academic transcript and student conduct history, accept impact statements by both the respondent and complainant, and then impose the appropriate sanction(s).

l. All procedural questions are subject to the final decision of the Board.

5. If the Board finds that the student is "Not in Violation" for the alleged misconduct, the Board shall not impose any sanctions and the instructor must reevaluate the student's course grade in light of the Board's finding.

6. If the Board finds that the student is "In Violation", the instructor's grading sanction shall be imposed. The Board does not have the authority to change or influence the grading sanction imposed by the instructor.

7. Upon consideration of a student's record of misconduct and/or the nature of the offense, the Board may impose additional sanctions. The Board should apply these sanctions in proportion to the severity of the misconduct. These sanctions may include any sanction as described in *The Student Code*.

8. All academic integrity hearings will be recorded and the University will maintain the audio recordings as required by Connecticut state law and are the property of the University. Participants are prohibited from making their own recording. Upon written request, a respondent or complainant may review the audio recording and make appropriate arrangements for it to be transcribed on University premises. Arrangements for a transcriber and all associated costs involved in the transcription will be the responsibility of the requesting individual.

## D. Hearing Appeal

1. The decision of the Board may be appealed to the Provost or designee. An appeal is not a new hearing. It is a review of the record of the hearing.

2. An appeal may be sought on three grounds:
   a. On a claim of error in the hearing procedure that substantially affected the decision.
   b. On a claim of new evidence or information material to the case that was not known at the time of the hearing.
   c. To determine whether any additional sanction(s), not including academic consequences, imposed by the Board were appropriate for the violation based on the student's conduct history and/or significance of the violation.

3. Appeals on such grounds may be presented, specifically described, in writing within five business days of the announcement of the Board's decision.

4. The decision of the Provost or designee is final. There will be no further right of appeal.

5. The Provost or designee shall have the authority to dismiss an appeal not sought on proper grounds.

6. If an appeal is upheld, the Provost shall refer the case with procedural specifications back to the original Board who shall reconsider the case accordingly.

06/14/2018

Exhibit F.

Under Seal

# Exhibit G.

Student Center

**Redacted**

| Search | Academic Planner | Enroll | My Academics |
|---|---|---|---|

## Request Official Transcript

You have a hold on your records - Click for Details.   ⊘

Please note: you will not be allowed to submit any official transcript request until this hold is removed.

**Information For Students**

Official transcript requests are processed using Parchment Ordering Services.

Before following the link below to request your official transcript:
* Check your unofficial transcript to confirm your grades, degree and/or any honors are listed. Semester grades and earned degrees will be available as they are posted.
* Have a credit card ready for processing and mailing fees; additional information is available at: www.registrar.uconn.edu/transcripts.
* Clear any holds on your records that block the release of your transcript.

**Click here to request your Official Transcript**

Search    Academic Planner    Enroll    My Academics

Home    Instructor/Advisor Help    Student Help    Admin Help    Performance Trace    Add to Favorites    Sign out

Favorites ▾    Main Menu ▾    > Self-Service ▾    > Student Center    > Request Official Transcript    > Holds

## Your Holds

### Hold Item

Redacted

No Enrollmt, Trnscrpt & Svcs

### Reason and Contact

| | |
|---|---|
| **Description:** | University of Connecticut |
| **Start Term** | Fall 2019 |
| **Start Date** | 10/15/2019 |
| **Reason:** | Hold for Administrative Reason |
| **Department:** | Bursar |
| **Contact:** | |

### Instructions

Your registration and official transcript and services are blocked. Please contact the Bursar's Office, Dept of Collections at (860)486-4830 regarding your account.

Return

# Exhibit H.

# Under Seal

Exhibit I.

Under Seal

Exhibit J.

Under Seal

# Exhibit K.

 **Redacted** 

so i'm gonna assume you're fully knowledgeable about what's happened and i'm just gonna say that i can't respect sexual predators or anybody who knowingly associates with them. as his "friend" you should be able to hold him accountable bc he was wrong. if the situation had been different, sure hold your bro down whatever blah blah. but this situation?? you and the rest of y'all niggas should've beat his ass. he needs his ass beat and had anything like this happened to any of y'all female relatives, y'all would certainly feel and behave completely different.



I'm not gonna go back and forth with you about something that doesn't involve me. You expressed your opinion, thank you for doing so. We can move on now

Seen

Message...   

Exhibit L.

# Under Seal

Exhibit M.

Under Seal

# Exhibit N.

# Under Seal

Exhibit O.

# UNIVERSITY OF CONNECTICUT POLICY AGAINST DISCRIMINATION, HARASSMENT, AND RELATED INTERPERSONAL VIOLENCE

*Including Sexual and Gender-Based Harassment, Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Complicity, Retaliation and Inappropriate Amorous Relationships*

**CONTENTS**

I.      STATEMENT OF POLICY .................................................................................................. 4

II.     TO WHOM THIS POLICY APPLIES ................................................................................ 5

III.    APPLICABLE PROCEDURES UNDER THIS POLICY ................................................... 6

        A.  WHERE THE RESPONDENT IS A STUDENT.................................................................. 6

        B.  WHERE THE RESPONDENT IS AN EMPLOYEE ............................................................ 6

        C.  WHERE THE RESPONDENT IS BOTH A STUDENT AND AN EMPLOYEE.............................. 6

        D. WHERE THE RESPONDENT IS A THIRD PARTY ............................................................ 7

        E.  WHERE THE RESPONDENT IS A UCH STUDENT, EMPLOYEE OR THIRD PARTY .................. 7

IV.     TITLE IX COORDINATOR ................................................................................................ 7

V.      UNDERSTANDING THE DIFFERENCE BETWEEN PRIVACY AND CONFIDENTIALITY.................. 8

VI.     EMPLOYEE REPORTING RESPONSIBILITIES ............................................................ 9

        A.  TITLE IX REPORTING OBLIGATIONS .......................................................................... 9

        B.  CLERY REPORTING OBLIGATIONS ............................................................................. 11

        C.  CHILD ABUSE REPORTING OBLIGATIONS .................................................................... 11

VII.    COMPLAINANT OPTIONS FOR REPORTING PROHIBITED CONDUCT.................................... 12

        A. REPORTING TO LAW ENFORCEMENT ........................................................................ 12

        B.  REPORTING TO THE UNIVERSITY ............................................................................. 13

VIII.   ACCESSING CAMPUS AND COMMUNITY RESOURCES .......................................... 14

IX.     PROHIBITED CONDUCT UNDER THIS POLICY ....................................................... 15

        A. DISCRIMINATION................................................................................................... 15

        B.  DISCRIMINATORY HARASSMENT............................................................................... 15

        C. SEXUAL OR GENDER-BASED HARASSMENT ................................................................ 16

        D.  SEXUAL ASSAULT ................................................................................................. 16

        E. SEXUAL EXPLOITATION............................................................................................ 17

        F. INTIMATE PARTNER VIOLENCE .................................................................................. 18

        G. STALKING ............................................................................................................. 18

        H. RETALIATION ......................................................................................................... 19

        I.  COMPLICITY ........................................................................................................... 19

X.      INAPPROPRIATE AMOROUS RELATIONSHIPS ........................................................ 19

A.  INSTRUCTIONAL/STUDENT CONTEXT ........................................................................... 19

B.  EMPLOYMENT CONTEXT ........................................................................................ 21

XI.   PREVENTION, AWARENESS AND TRAINING PROGRAMS ..................................................... 23

XII.   OBLIGATION TO PROVIDE TRUTHFUL INFORMATION ......................................................... 23

XIII.   RELATED POLICIES .................................................................................................. 23

A.  STUDENTS ......................................................................................................... 23

B. EMPLOYEES ......................................................................................................... 23

XIV.   POLICY REVIEW ...................................................................................................... 24

## I.    STATEMENT OF POLICY

The University of Connecticut (the "University") is committed to maintaining a safe and non-discriminatory learning, living, and working environment for all members of the University community – students, employees, and visitors.  Academic and professional excellence can exist only when each member of our community is assured an atmosphere of safety and mutual respect. All members of the University community are responsible for the maintenance of an environment in which people are free to learn and work without fear of discrimination, discriminatory harassment or interpersonal violence.  Discrimination diminishes individual dignity and impedes equal employment and educational opportunities.

The University does not unlawfully discriminate in any of its education or employment programs and activities on the basis of an individual's race, color, ethnicity, religious creed, age, sex, marital status, national origin, ancestry, sexual orientation, genetic information, physical or mental disability (including learning disabilities, intellectual disabilities, and past or present history of mental illness), veteran's status, prior conviction of a crime, workplace hazards to the reproductive system, gender identity or expression, or membership in any other protected classes as set forth in state or federal law.  To that end, this Policy Against Discrimination, Harassment and Related Interpersonal Violence, Including Sexual and Gender-Based Harassment, Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Complicity, Retaliation and Inappropriate Amorous Relationships (the "Policy Against Discrimination" or "Policy") prohibits specific forms of behavior that violate state and federal laws, including but not limited to Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Education Amendments of 1972 ("Title IX"), the Violence Against Women Reauthorization Act of 2013 ("VAWA"), and related state and federal anti-discrimination laws. Such behavior may also require the University to fulfill certain reporting obligations under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (the "Clery Act"), as amended by VAWA, and Connecticut state law regarding reporting suspected child abuse and neglect.

The University prohibits discrimination, as well as discriminatory harassment, sexual assault, sexual exploitation, intimate partner violence, stalking, sexual or gender-based harassment, complicity in the commission of any act prohibited by this Policy, retaliation against a person for the good faith reporting of any of these forms of conduct or participation in any investigation or proceeding under this Policy (collectively, "Prohibited Conduct"[1]).  These forms of Prohibited Conduct are unlawful and undermine the mission and values of our academic community. In addition, engagement in or pursuit of inappropriate amorous relationships with employees in positions of authority can undermine the University's mission when those in positions of authority abuse or appear to abuse their authority.

The University adopts this Policy with a commitment to: (1) eliminating, preventing, and addressing the effects of Prohibited Conduct; (2) fostering a safe and respectful University community; (3) cultivating a climate where all individuals are well-informed and supported in reporting Prohibited

---

[1] Definitions for all forms of Prohibited Conduct can be found in Section IX of this Policy.

Conduct; (4) providing a fair and impartial process for all parties in the investigation and resolution of such reports; and (5) identifying the standards by which violations of this Policy will be evaluated and disciplinary action may be imposed. In addition, the University conducts ongoing prevention, awareness, and training programs for employees and students to facilitate the goals of this Policy.

A student or employee determined by the University to have committed an act of Prohibited Conduct is subject to disciplinary action, up to and including separation from the University. Third Parties who commit acts of Prohibited Conduct may have their relationships with the University terminated and/or their privileges of being on University premises withdrawn.

It is the responsibility of every member of the University community to foster an environment free of Prohibited Conduct. All members of the University community are encouraged to take reasonable and prudent actions to prevent or stop an act of Prohibited Conduct. The University will support and assist community members who take such actions.

Retaliation against any individual who, in good faith, reports or participates in the reporting, investigation, or adjudication of Prohibited Conduct is strictly forbidden.

This Policy applies to all reports of Prohibited Conduct occurring on or after the effective date of this Policy. Where the date of the Prohibited Conduct precedes the effective date of this Policy, the definitions of misconduct in effect at the time of the alleged incident(s) will be used.

## II.   <u>TO WHOM THIS POLICY APPLIES</u>

This Policy applies to: students as defined in *UConn's Responsibilities of Community Life: The Student Code* and students enrolled at UConn Health ("Students"); University employees, consisting of all full-time and part-time faculty, University Staff (including special payroll employees), UConn Health employees (including residents and fellows), professional research staff, and post-doctoral research associates ("Employees"); and contractors, vendors, visitors, guests or other third parties ("Third Parties"). This Policy pertains to acts of Prohibited Conduct committed by or against Students, Employees and Third Parties when:

1. the conduct occurs on campus or other property owned or controlled by the University;

2. the conduct occurs in the context of a University employment or education program or activity, including, but not limited to, University-sponsored study abroad, research, on-line, or internship programs; or

3. the conduct occurs outside the context of a University employment or education program or activity, but has continuing adverse effects on or creates a hostile environment for Students, Employees or Third Parties while on campus or other property owned or controlled by the University or in any University employment or education program or activity.

### III.   APPLICABLE PROCEDURES UNDER THIS POLICY

The specific procedures for reporting, investigating, and resolving Prohibited Conduct are based upon the nature of the respondent's relationship to the University (Student, Employee, or Third Party). Each set of procedures referenced below is guided by the same principles of fairness and respect for complainants and respondents. "Complainant" means the individual who presents as the victim of any Prohibited Conduct under this Policy, regardless of whether that person makes a report or seeks action under this Policy.[2] "Respondent" means the individual who has been accused of violating this Policy.

The procedures referenced below provide for prompt and equitable response to reports of Prohibited Conduct. The procedures designate specific timeframes for major stages of the process, provide for thorough and impartial investigations that afford the Complainant and Respondent notice and an opportunity to present witnesses and evidence, and assure equal and timely access to the information that will be used in determining whether a Policy violation has occurred. The University applies the Preponderance of the Evidence standard when determining whether this Policy has been violated. "Preponderance of the Evidence" means that it is more likely than not that a Policy violation occurred.

A.   WHERE THE RESPONDENT IS A STUDENT

Except as noted in Section IIIE, below, the procedures for responding to reports of Prohibited Conduct committed by Students are detailed in *Responsibilities of Community Life: The Student Code* ("*The Student Code*") (http://community.uconn.edu/the-student-code-preamble/).

B.   WHERE THE RESPONDENT IS AN EMPLOYEE

The procedures for responding to reports of Prohibited Conduct committed by Employees are detailed in OIE's Complaint Processes (http://www.equity.uconn.edu/discrimination/complaint-procedures/).

C.   WHERE THE RESPONDENT IS BOTH A STUDENT AND AN EMPLOYEE

Each situation will be evaluated for context and the University will determine which of the procedures applies based on the facts and circumstances (such as which role predominates in the context of the alleged Prohibited Conduct). The Student-Respondent procedures typically will apply to graduate students except in those cases

---

[2] UConn recognizes that an individual may choose to self-identify as a victim or a survivor. For consistency in this Policy, the University uses the term Complainant to maintain the neutrality of the Policy and procedures.

where the graduate student's assistantship role predominated in the context of the Prohibited Conduct. Further, where a Respondent is both a Student and an Employee (including but not limited to graduate students), the Respondent may be subject to any of the sanctions applicable to Students or Employees.

D. <u>WHERE THE RESPONDENT IS A THIRD PARTY</u>

The University's ability to take appropriate corrective action against a Third Party will be determined by the nature of the relationship of the Third Party to the University. The University will determine the appropriate manner of resolution consistent with the University's commitment to a prompt and equitable process under federal law, federal guidance, and this Policy.

E. <u>WHERE THE RESPONDENT IS A UCONN HEALTH STUDENT, EMPLOYEE OR THIRD PARTY</u>

Parties should contact the UConn Health Office of Institutional Equity by calling (860) 679-3563 or email: equity@uconn.edu. UConn's *Responsibilities of Community Life: The Student Code* does not apply to students enrolled in MD or DMD/DDS degree programs at UConn Health.


**IV.    TITLE IX COORDINATOR**

Under Title IX:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

The Title IX Coordinator is charged with monitoring the University's compliance with Title IX, ensuring appropriate education and training, coordinating the University's investigation, response, and resolution of all reports under this Policy, and ensuring appropriate actions to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects. The Office of Institutional Equity oversees reports involving Students, Employees, and Third Parties.  The University has also designated Deputy Title IX Coordinators who may assist the Title IX Coordinator in the discharge of these responsibilities. The Title IX Coordinator and Deputy Title IX Coordinators receive ongoing appropriate training to discharge their responsibilities.

Concerns about the University's application of Title IX may be addressed to the Title IX Coordinator.  Additionally, concerns about the University's application of Title VII and/or other federal and state anti-discrimination laws may be addressed to the Office of Institutional Equity.

The Title IX Coordinator and Deputy Title IX Coordinators can be contacted by telephone, email, or in person during regular office hours:

**Elizabeth A. Conklin**
Associate Vice President, Office of Institutional Equity
Title IX Coordinator
Storrs: Wood Hall, First Floor
UConn Health: Munson Road, Fourth Floor
elizabeth.conklin@uconn.edu
(860) 486-2943

**Sarah Chipman**
Director of Investigations, Office of Institutional Equity
Deputy Title IX Coordinator
Storrs: Wood Hall, First Floor
UConn Health: Munson Road, Fourth Floor
sarah.chipman@uconn.edu
(860) 486-2943

External reporting options include the United States Department of Education, Clery Act Compliance Team (at clery@ed.gov); the United States Department of Education, Office for Civil Rights (at OCR@ed.gov or (800) 421-3481); the Equal Employment Opportunity Commission (at info@eeoc.gov or (800) 669-4000); and/or the Connecticut Commission on Human Rights and Opportunities ((800)-477-5737).

## V.  UNDERSTANDING THE DIFFERENCE BETWEEN PRIVACY AND CONFIDENTIALITY

The University is committed to protecting the privacy of all individuals involved in the investigation and resolution of a report under this Policy. The University also is committed to providing assistance to help Students, Employees, and Third Parties make informed choices. With respect to any report under this Policy, the University will take reasonable efforts to protect the privacy of participants, in accordance with applicable state and federal law, while balancing the need to gather information to assess the report and to take steps to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.

Privacy and confidentiality have distinct meanings under this Policy.

**Privacy:** Privacy means that information related to a report of Prohibited Conduct will be shared with University Employees who need to know the information in order to assist individuals identified as having been impacted by the alleged conduct in the assessment, investigation, and resolution of the report. All Employees who are involved in the University's response to reports of Prohibited Conduct receive specific training and guidance about sharing and safeguarding private information in accordance with state and federal law.

The privacy of Student education records will be protected in accordance with relevant

privacy laws including the Family
Educational Rights and Privacy Act ("FERPA"), as outlined in the University's FERPA policy. (http://policy.uconn.edu/2011/05/24/ferpa-policy/).

**Confidentiality:** Confidentiality exists in the context of laws that protect certain relationships, including with medical and clinical care providers (and those who provide administrative services related to the provision of medical and clinical care), mental health providers, counselors, and ordained clergy, all of whom may engage in confidential communications under Connecticut law. The University has designated individuals who have the ability to have privileged communications as "Confidential Employees." When information is shared by an individual with a Confidential Employee or a community professional with the same legal protections, the Confidential Employee (and/or such community professional) cannot reveal the information to any third party except where required or permitted by law. For example, information may be disclosed when: (i) the individual gives written consent for its disclosure; (ii) there is a concern that the individual will likely cause serious physical harm to self or others; or (iii) the information concerns conduct involving suspected abuse or neglect of a minor under the age of 18.

## VI.    EMPLOYEE REPORTING RESPONSIBILITIES

### A.    TITLE IX REPORTING OBLIGATIONS

Most University employees are required to immediately report information about certain types of Prohibited Conduct involving any Student to the University's Office of Institutional Equity.[3]  An Employee's responsibility to report under this Policy is governed by their role at the University.  The University designates every Employee as either a Confidential Employee or a Responsible Employee.

**Confidential Employee:** Any Employee who is entitled under state law to have privileged communications.  Confidential Employees will not disclose information about Prohibited Conduct to the University without the permission of the Student or Employee (subject to the exceptions set forth in the Confidentiality section of this Policy). Confidential Employees at the University of Connecticut include:

- Student Health Services
- Counseling and Mental Health Services
- Employee Assistance Program

**Responsible Employee:** Any Employee who is not a Confidential Employee, and

---

[3] Although this Policy is directed primarily to disclosures by Students, as explained herein certain supervisory employees are obligated to report disclosures about all types of Prohibited Conduct involving a University employee.

certain categories of student employees. Responsible Employees include (but are not necessarily limited to) Faculty and Staff, Resident Assistants, Post-Doctoral Research Assistants, Graduate Teaching Assistants, Graduate Research Assistants, and any student-employees serving as Campus Security Authorities (CSAs) when disclosures are made to any of them in their capacities as Employees.

Responsible Employees are required to immediately report to the University's Office of Institutional Equity all relevant details (obtained directly or indirectly) about an incident of Sexual Assault, Intimate Partner Violence and/or Stalking (as defined in Section IX, below) that involves any Student as a Complainant, Respondent, and/or witness, including dates, times, locations, and names of parties and witnesses. [4] Reporting is required when the Responsible Employee knows (by reason of a direct or indirect disclosure) of such Sexual Assault, Intimate Partner Violence, and/or Stalking. Reporting is required when a student is reported to have been involved in such an incident, regardless of the date, location (on or off campus) or identities of other parties alleged to have been involved in the incident. This manner of reporting may help inform the University of the general extent and nature of allegations of Prohibited Conduct on and off campus so the University can track patterns, evaluate the scope of the problem, formulate appropriate campus-wide responses, and ensure that impacted students are provided with information about reporting options and support resources.

Responsible Employees are not required to report information disclosed (1) at public awareness events (*e.g.*, "Take Back the Night," candlelight vigils, protests, "survivor speak-outs" or other public forums in which Students may disclose incidents of Prohibited Conduct; collectively, "Public Awareness Events"); (2) during a Student's participation as a subject in an Institutional Review Board-approved human subjects research protocol ("IRB Research"); or (3) as part of coursework submitted to an instructor  in connection with a course assignment.  Even in the absence of such obligation, all Employees are encouraged to contact the Title IX Coordinator if they become aware of information that suggests a safety risk to the University community or any member thereof. The University may provide information about Students' Title IX and/or other civil rights and about available University and community resources and support at Public Awareness Events, however, and Institutional Review Boards may, in appropriate cases, require researchers to provide such information to all Student subjects of IRB Research.

**Dean, Director, Department Head, and Supervisor Responsibility to Report Prohibited Conduct Where Either the Complainant or the Respondent is an**

---

[4] While Employees are encouraged to report any form of Prohibited Conduct, only Sexual Assault, Intimate Partner Violence and Stalking ***must*** be reported under this Policy.

**Employee.**  Under this Policy, Deans, Directors, Department Heads and Supervisors are required to report to the Office of Institutional Equity all relevant details about an incident of Prohibited Conduct[5] (including but not limited to discrimination, discriminatory harassment, sexual harassment, and/or retaliation) where either the Complainant or the Respondent is an Employee.  Reporting is required when such Deans, Directors, Department Heads and Supervisors know (by reason of direct or indirect disclosure) or should have known of such Prohibited Conduct.

All University Employees are strongly encouraged to report to the law enforcement any conduct that could potentially present a danger to the community or may be a crime under Connecticut law.

B.  <u>CLERY REPORTING OBLIGATIONS</u>

Under the Clery Act, certain University employees are designated as Campus Security Authorities.  CSAs generally include individuals with significant responsibility for campus security or student and campus activities.  Based on information reported to CSAs, the University includes statistics about certain criminal offenses in its annual security report and provides those statistics to the United States Department of Education in a manner that does not include any personally identifying information about individuals involved in an incident. The Clery Act also requires the University to issue timely warnings to the University community about certain reported crimes that may pose a serious or continuing threat to Students and Employees. Consistent with the Clery Act, the University withholds the names and other personally identifying information of Complainants when issuing timely warnings to the University community.

C.  <u>CHILD ABUSE REPORTING OBLIGATIONS</u>

**All** University Employees except student employees are **mandated reporters** of child abuse or neglect as defined by Connecticut General Statutes Section 17a-101(b) and must comply with Connecticut's mandated reporting laws.  *See* Connecticut General Statutes Sections 17a-101a to 17a-101d. All University Employees should refer to UConn's Protection of Minors and Reporting of Child Abuse and Neglect Policy (http://policy.uconn.edu/?p=6754) for detailed definitions and reporting information.

**VII.    <u>COMPLAINANT OPTIONS FOR REPORTING PROHIBITED CONDUCT</u>**

A Complainant may choose to report to the University and/or to law enforcement when alleged Prohibited Conduct may also constitute a crime under the applicable laws. These two reporting options are not mutually exclusive.  Therefore, Complainants may choose to pursue both the

---

[5] These supervisory employees are required to report **all** forms of Prohibited Conduct where the Complainant or Respondent is an Employee.

University process and the criminal process concurrently. The University will support Complainants in understanding, assessing and pursuing these options.

The first priority for any individual should be personal safety and well-being.  In addition to seeking immediate medical care, the University encourages all individuals to seek immediate assistance from 911, UConn Police, and/or local law enforcement.  This is the best option to ensure preservation of evidence.  The University also strongly urges that law enforcement be notified immediately in situations that may present imminent or ongoing danger.

A.  <u>REPORTING TO LAW ENFORCEMENT</u>

Conduct that violates this Policy may also constitute a crime under the laws of the jurisdiction in which the incident occurred. For example, the State of Connecticut criminalizes and punishes some forms of Sexual Assault, Intimate Partner Violence, Sexual Exploitation, Stalking, and Physical Assault.  See Title 53a of the Connecticut General Statutes for the State of Connecticut's Penal Code (https://www.cga.ct.gov/current/pub/title_53a.htm).  Whether or not any specific incident of Prohibited Conduct may constitute a crime is a decision made solely by law enforcement.  Similarly, the decision to arrest any individual for engaging in any incident of Prohibited Conduct is determined solely by law enforcement and not the University. Such decisions are based on a number of factors, including availability of admissible evidence.

Complainants have the right to notify or decline to notify law enforcement. In keeping with its commitment to take all appropriate steps to eliminate, prevent, and remedy all Prohibited Conduct, the University urges Complainants (or others who become aware of potential criminal conduct) to report Prohibited Conduct immediately to local law enforcement by contacting:

i.  911 (for emergencies)
ii.  University Police (for non-emergencies):
1.  **Storrs and Regional Campuses** (860) 486-4800
2.  **UConn Health** (860) 679-2121
iii.  State Police (for conduct occurring off campus in Connecticut) (800) 308-7633

Police have unique legal authority, including the power to seek and execute search warrants, collect forensic evidence, make arrests, and assist in seeking protective and restraining orders. Although a police report may be made at any time, Complainants should be aware that delayed reporting may diminish law enforcement's ability to take certain actions, including collecting forensic evidence and making arrests. The University will assist Complainants in notifying law enforcement if they choose to do so.  Under limited circumstances posing a threat to health or safety of any University community member, the University may independently notify law enforcement.

B.  REPORTING TO THE UNIVERSITY

Complainants (or others who become aware of an incident of Prohibited Conduct) are encouraged to report the incident to the University through the following reporting options:

By contacting the Office of Institutional Equity by telephone, email, or in person during regular office hours (8am-5pm, M-F):

> Office of Institutional Equity (Storrs and Regionals)
> Wood Hall, First Floor
> 241 Glenbrook Road
> Storrs, Connecticut
> (860) 486-2943
> equity@uconn.edu
> www.titleix.uconn.edu
> www.equity.uconn.edu

> Office of Institutional Equity (UConn Health)
> 16 Munson Road, 4th Floor
> Farmington, Connecticut
> (860) 679-3563
> equity@uconn.edu
> www.equity.uconn.edu

There is no time limit to report Prohibited Conduct to the University under this Policy;[6] however, the University's ability to respond may diminish over time, as evidence may erode, memories may fade, and Respondents may no longer be affiliated with the University. If the Respondent is no longer affiliated with the University, the University will provide reasonably appropriate remedial measures, assist the Complainant in identifying external reporting options, and take reasonable steps to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.

The University will not pursue disciplinary action against Complainants or witnesses for disclosure of illegal personal consumption of drugs or alcohol where such disclosures are made in connection with a good faith report or investigation of Prohibited Conduct.

VIII.   ACCESSING CAMPUS AND COMMUNITY RESOURCES

---

[6] This statement does not relieve Responsible Employees of their obligation to report Sexual Assault, Intimate Partner Violence and/or Stalking involving a Student immediately to the Office of Institutional Equity.

The University offers a wide range of resources to provide support and guidance to Students and Employees in response to any incident of Prohibited Conduct.  Comprehensive information on accessing University and community resources is contained online at the following sites:

- Sexual assault, sexual exploitation, intimate partner violence, sexual or gender-based harassment, and stalking:  www.titleix.uconn.edu
- Discrimination and discriminatory harassment where the Respondent is an Employee or Third Party:  www.equity.uconn.edu
- Related violations of *The Student Code* where the Respondent is a Student: www.community.uconn.edu

Available resources include: emergency and ongoing assistance; health, mental health, and victim-advocacy services; options for reporting Prohibited Conduct to the University and/or law enforcement; and available support with academics, housing, and employment.

The University offers a wide range of resources for Students and Employees, whether as Complainants or Respondents, to provide support and guidance throughout the submission, investigation, and resolution of a report of Prohibited Conduct. The University will offer reasonable and appropriate measures to individuals impacted by an allegation of Prohibited Conduct in order to facilitate their continued access to University employment or education programs and activities. These measures may be both remedial (designed to address a Complainant's safety and well-being and continued access to educational opportunities) or protective (designed to reduce the risk of harm to an individual or community). Remedial and protective measures, which may be temporary or permanent, may include no-contact directives, on-campus residence modifications, academic modifications and support, work schedule modifications, suspension from employment, and pre-disciplinary leave (with or without pay). Remedial measures are available regardless of whether a Complainant pursues a complaint or investigation under this Policy and may continue regardless of the outcome of an investigation if reasonable and appropriate.

The University will maintain the privacy of any remedial and protective measures provided under this Policy to the extent practicable and will promptly address any violation of the protective measures. The University has the discretion to impose and/or modify any remedial or protective measure based on all available information.

The University will provide reasonable remedial and protective measures to Third Parties as appropriate and available, taking into account the role of the Third Party and the nature of any contractual relationship with the University.

IX.     **PROHIBITED CONDUCT UNDER THIS POLICY[7]**

Conduct under this Policy is prohibited regardless of the sex, sexual orientation and/or gender identity/expression of the Complainant or Respondent. Prohibited Conduct includes the following specifically defined forms of behavior: Discrimination, Discriminatory Harassment, Sexual or Gender-Based Harassment, Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Complicity, and Retaliation.

A. <u>DISCRIMINATION</u>

**Discrimination** is any unlawful distinction, preference, or detriment to an individual that is based upon an individual's race, color, ethnicity, religious creed, age, sex, marital status, national origin, ancestry, sexual orientation, genetic information, physical or mental disabilities (including learning disabilities, intellectual disabilities, past/present history of a mental disorder), veteran status, prior conviction of a crime, workplace hazards to reproductive systems, gender identity or expression, or membership in other protected classes set forth in state or federal law and that: (1) excludes an individual from participation; (2) denies the individual the benefits of; (3) treats the individual differently; or (4) otherwise adversely affects a term or condition of an individual's employment, education, living environment or participation in a University program or activity.

Discrimination includes failing to provide reasonable accommodation, consistent with state and federal law, to persons with disabilities.  The University of Connecticut is committed to achieving equal educational and employment opportunity and full participation for persons with disabilities.  *See* Policy Statement: People with Disabilities (http://policy.uconn.edu/2011/05/24/people-with-disabilities-policy-statement/).

B. <u>DISCRIMINATORY HARASSMENT</u>

**Discriminatory Harassment** consists of verbal, physical, electronic, or other conduct based upon an individual's race, color, ethnicity, religious creed, age, sex, marital status, national origin, ancestry, sexual orientation, genetic information, physical or mental disabilities (including learning disabilities, intellectual disability, past/present history of a mental disorder), veteran status, prior conviction of a crime, workplace hazards to reproductive systems, gender identity or expression, or membership in other protected classes set forth in state or federal law that interferes with that individual's educational or employment opportunities, participation in a University program or activity, or receipt of legitimately-requested services or benefits. Such conduct is a violation of this Policy when the circumstances demonstrate the existence of either *Hostile Environment Harassment* or *Quid Pro Quo Harassment*, as defined below.

---

[7] These definitions may overlap with Connecticut criminal statutes in some cases, and provide greater protection in other instances.  Connecticut's Penal Code may be found in Title 53a of the Connecticut General Statutes.  (https://www.cga.ct.gov/current/pub/title_53a.htm)

*Hostile Environment Harassment:* **Discriminatory Harassment** that is so severe, persistent or pervasive that it unreasonably interferes with, limits, deprives, or alters the conditions of education (*e.g.*, admission, academic standing, grades, assignment); employment *(e.g.*, hiring, advancement, assignment); or participation in a University program or activity (*e.g.*, campus housing, official University list-servs or other University-sponsored platforms), when viewed from both a subjective and objective perspective.

*Quid Pro Quo Harassment:* **Discriminatory Harassment** where submission to or rejection of unwelcome conduct is used, explicitly or implicitly, as the basis for decisions affecting an individual's education (*e.g.*, admission, academic standing, grades, assignment); employment (*e.g.*, hiring, advancement, assignment); or participation in a University program or activity (*e.g.*, campus housing).

**Discriminatory Harassment** may take many forms, including verbal acts, name-calling, graphic or written statements (including the use of cell phones or the Internet), or other conduct that may be humiliating or physically threatening.

C. <u>SEXUAL OR GENDER-BASED HARASSMENT</u>

**Sexual Harassment** is unwelcome conduct of a sexual nature. This may include, but is not limited to, unwanted sexual advances, requests for sexual favors, inappropriate touching, acts of sexual violence, or other unwanted conduct of a sexual nature, whether verbal, non-verbal, graphic, physical, written or otherwise. Such conduct is a violation of this Policy when the conditions for *Hostile Environment Harassment* or *Quid Pro Quo Harassment* are present, as defined above.

**Gender-Based Harassment** includes harassment based on gender, sexual orientation, gender identity, or gender expression, which may include acts of aggression, intimidation, or hostility, whether verbal or non-verbal, graphic, physical, written or otherwise, even if the acts do not involve conduct of a sexual nature. Such conduct is a violation of this Policy when the conditions for *Hostile Environment Harassment* or *Quid Pro Quo Harassment* are present, as defined above.

D. <u>SEXUAL ASSAULT</u>

**Sexual Assault** consists of (1) Sexual Contact and/or (2) Sexual Intercourse that occurs without (3) Consent.

1.   **Sexual Contact** (or attempts to commit) is the intentional touching of another person's intimate body parts, clothed or unclothed, if that intentional touching can reasonably be construed as having the intent or purpose of obtaining sexual arousal or gratification.

2.   **Sexual Intercourse** (or attempts to commit) is any penetration, however slight, of a bodily orifice with any object(s) or body part.  Sexual Intercourse includes vaginal or anal penetration by a penis, object, tongue or finger, or any contact between the mouth of one person and the genitalia of another person.

3.   **Consent** is an understandable exchange of affirmative words or actions, which indicate a willingness to participate in mutually agreed upon sexual activity. Consent must be informed, freely and actively given. It is the responsibility of the initiator to obtain clear and affirmative responses at each stage of sexual involvement. Consent to one form of sexual activity does not imply consent to other forms of sexual activity. The lack of a negative response is not consent. An individual who is incapacitated by alcohol and/or other drugs both voluntarily or involuntarily consumed may not give consent. Past consent of sexual activity does not imply ongoing future consent.

**Consent** cannot be given if any of the following are present: A. Force, B. Coercion or C. Incapacitation.

**A.**   **Force** is the use of physical violence and/or imposing on someone physically to gain sexual access. Force also includes threats, intimidation (implied threats) and/or coercion that overcome resistance.

**B.**   **Coercion** is unreasonable pressure for sexual activity. Coercion is more than an effort to persuade, entice, or attract another person to have sex.  Conduct does not constitute coercion unless it wrongfully impairs an individual's freedom of will to choose whether to participate in the sexual activity.

**C.**   **Incapacitation** is a state where an individual cannot make rational, reasonable decisions due to the debilitating use of alcohol and/or other drugs, sleep, unconsciousness, or because of a disability that prevents the individual from having the capacity to give consent. Intoxication is not incapacitation and a person is not incapacitated merely because the person has been drinking or using drugs. Incapacitation due to alcohol and/or drug consumption results from ingestion that is more severe than impairment, being under the influence, drunkenness, or intoxication. The question of incapacitation will be determined on a case-by-case basis. Being intoxicated or incapacitated by drugs, alcohol, or other medication will not be a defense to any violation of this Policy.

E.   SEXUAL EXPLOITATION

**Sexual Exploitation** is taking advantage of a person due to their sex and/or gender identity for personal gain or gratification. It is the abuse of a position of vulnerability, differential power, or trust for sexual purposes. Examples include, but are not limited to:

- Recording, photographing, disseminating, and/or posting images of private sexual activity and/or a person's intimate parts (including genitalia, groin, breasts, or buttocks) without consent;
- Threatening to disseminate sensitive personal materials (e.g. photos, videos) by any means to any person or entity without consent;
- Allowing third parties to observe private sexual activity from a hidden location without consent (for example through a hidden location (*e.g.*, closet) or through electronic means (*e.g.*, Skype or livestreaming of images);
- Fetish behaviors including stealing articles of clothing for personal gain and/or satisfaction;
- Manipulation of contraception;
- Peeping or voyeurism;
- Prostituting another person;
- Intentionally or knowingly exposing another person to a sexually transmitted infection or virus without the other's knowledge; or
- Possessing, distributing, viewing or forcing others to view illegal pornography.

F.  INTIMATE PARTNER VIOLENCE

**Intimate Partner Violence** includes any act of violence or threatened act of violence that occurs between individuals who are involved or have been involved in a sexual, dating, spousal, domestic, or other intimate relationship. Intimate Partner Violence may include any form of Prohibited Conduct under this Policy, including Sexual Assault, Stalking (as defined herein) and/or physical assault. Intimate Partner Violence may involve a pattern of behavior used to establish power and control over another person through fear and intimidation, or may involve one-time conduct.  A pattern of behavior is typically determined based on the repeated use of words and/or actions and inactions in order to demean, intimidate, and/or control another person. This behavior can be verbal, emotional and/or physical.

G.  STALKING

**Stalking** means engaging in a course of conduct directed at a specific individual that would cause a reasonable person to fear for their safety or the safety of others, or for the individual to suffer substantial emotional distress.

Stalking includes unwanted, repeated, or cumulative behaviors that serve no purpose other than to threaten, or cause fear for another individual.

Common stalking acts include, but are not limited to: harassing, threatening or obscene phone calls, excessive and/or threatening communication, following, vandalism of personal property, and/or leaving/giving unwanted gifts or objects. Stalking includes cyberstalking.

H. RETALIATION

**Retaliation** means any adverse action taken against a person for making a good faith report of Prohibited Conduct or participating in any proceeding under this Policy, including requesting remedial and/or protective measures. Retaliation includes threatening, intimidating, harassing, coercing, interfering with potential witnesses or a potential proceeding under this Policy, or any other conduct that would discourage a reasonable person from engaging in activity protected under this Policy. Retaliation may be present even where there is a finding of "no responsibility" on the allegations of Prohibited Conduct. Retaliation does not include good faith actions lawfully pursued in response to a report of Prohibited Conduct.

Retaliation can include, but is not limited to, actions taken by the University, actions taken by one Student against another Student, actions taken by an Employee against another Employee or Student, or actions taken by a Third Party against a Student or Employee. *See the University's Non-Retaliation Policy* [http://policy.uconn.edu/2011/05/24/non-retaliation-policy/].

I. COMPLICITY

**Complicity** is any act taken with the purpose of aiding, facilitating, promoting or encouraging the commission of an act of Prohibited Conduct by another person.

## X. INAPPROPRIATE AMOROUS RELATIONSHIPS

For the purposes of this Policy, "amorous relationships" are defined as intimate, sexual, and/or any other type of amorous encounter or relationship, whether casual or serious, short-term or long-term.

A. INSTRUCTIONAL/STUDENT CONTEXT

All faculty and staff must be aware that amorous relationships with students are likely to lead to difficulties and have the potential to place faculty and staff at great personal and professional risk.  The power difference inherent in the faculty-student or staff-student relationship means that any amorous relationship between a faculty or staff member and a student is potentially exploitative or could at any time be perceived as exploitative and should be avoided.  Faculty and staff engaged in such relationships should be sensitive to the continuous possibility that they may unexpectedly be placed in a position of responsibility for the student's instruction or evaluation.  In the event of a charge of Sexual Harassment arising from such circumstances, the University will in general be unsympathetic to a defense based upon consent when the facts establish that a faculty-student or staff-student power differential existed within the relationship.

1.  Undergraduate Students

    Subject to the limited exceptions herein, all members of the faculty and staff are prohibited from pursuing or engaging in an amorous relationship with any undergraduate student.

2.  Graduate Students

    With respect to graduate students (including but not limited to Master's, Law, Doctoral, Medical, Dental and any other post-baccalaureate students), all faculty and staff are prohibited from pursuing or engaging in an amorous relationship with a graduate student under that individual's authority. Situations of authority include, but are not limited to: teaching; formal mentoring or advising; supervision of research and employment of a student as a research or teaching assistant; exercising substantial responsibility for grades, honors, or degrees; and involvement in disciplinary action related to the student.

    Students and faculty/staff alike should be aware that pursuing or engaging in an amorous relationship with any graduate student will limit the faculty or staff member's ability to teach, mentor, advise, direct work, employ and promote the career of the student involved with them in an amorous relationship.

3.  Graduate Students in Positions of Authority

    Like faculty and staff members, graduate students may themselves be in a position of authority over other students, for example, when serving as a teaching assistant in a course or when serving as a research assistant and supervising other students in research.  The power difference inherent in such relationships means that any amorous relationship between a graduate student and another student over whom they have authority (undergraduate or graduate) is potentially exploitative and should be avoided. All graduate students currently or previously engaged in an amorous relationship with another student are prohibited from serving in a position of authority over that student. Graduate students also should be sensitive to the continuous possibility that they may unexpectedly be placed in a position of responsibility for another student's instruction or evaluation.

4.  Pre-existing Relationships with Any Student

    The University recognizes that an amorous relationship may exist prior to the time a student enrolls at the University or, for amorous relationships with graduate students, prior to the time the faculty or staff member is placed in a position of authority over the graduate student.  The current or prior existence of such an amorous relationship must be disclosed to the Office of Institutional Equity by the employee in a position of

authority immediately if the student is an undergraduate, and prior to accepting a supervisory role of any type over any graduate student.

All faculty and staff currently or previously engaged in an amorous relationship with a student are prohibited from the following unless effective steps have been taken in conjunction with Labor Relations and the applicable dean or vice president to eliminate any potential conflict of interest in accordance with this Policy: teaching; formal mentoring or advising; supervising research; exercising responsibility for grades, honors, or degrees; considering disciplinary action involving the student; or employing the student in any capacity - including but not limited to student employment and internships, work study, or as a research or teaching assistant.

Similarly, all graduate students currently or previously engaged in an amorous relationship with another student are prohibited from serving in a position of authority over that student.

5.  If an Amorous Relationship Occurs with Any Student

    If, despite these warnings, a faculty member, staff member, or graduate student becomes involved in an amorous relationship with a student in violation of this Policy, the faculty member, staff member, or graduate student must disclose the relationship immediately to the Office of Institutional Equity.  Absent an extraordinary circumstance, no relationships in violation of this Policy will be permitted while the student is enrolled or the faculty or staff member is employed by the University.  In most cases, it will be unlikely that an acceptable resolution to the conflict of interest will be possible, and the faculty or staff member's employment standing or the graduate student's position of authority may need to be adjusted until they no longer have supervisory or other authority over the student.

    In addition to the amorous relationship itself, a faculty, staff or graduate student's failure to report the existence of an inappropriate amorous relationship with a student is also a violation of this Policy.  The University encourages immediate self-reporting, and will consider this factor in the context of any resolution that may be able to be reached.

B.  EMPLOYMENT CONTEXT

    Amorous relationships between supervisors and their subordinate employees often adversely affect decisions, distort judgment, and undermine workplace morale for all employees, including those not directly engaged in the relationship.  Any University employee who participates in supervisory or administrative decisions concerning an employee with whom they have or has had an amorous relationship has a conflict of interest in those situations. These types of relationships, specifically those involving spouses and/or individuals who reside together, also may violate the State Code of Ethics for Public

Officials as well as the University's Policy on Employment and Contracting for Service of Relatives.

Accordingly, the University prohibits all faculty and staff from pursuing or engaging in amorous relationships with employees whom they supervise.  No supervisor shall initiate or participate in institutional decisions involving a direct benefit or penalty (employment, retention, promotion, tenure, salary, leave of absence, etc.) to a person with whom that individual has or has had an amorous relationship.  The individual in a position of authority can be held accountable for creating a sexually hostile environment or failing to address a sexually hostile environment and thus should avoid creating or failing to address a situation that adversely impacts the working environment of others.

1.  Pre-existing Amorous Relationships Between Supervisors and Subordinate Employees

    The University recognizes that an amorous relationship may exist prior to the time an individual is assigned to a supervisor.  Supervisory, decision-making, oversight, evaluative or advisory relationships for someone with whom there exists or previously has existed an amorous relationship is unacceptable unless effective steps have been taken to eliminate any potential conflict of interest in accordance with this Policy.  The current or prior existence of such a relationship must be disclosed by the employee in a position of authority prior to accepting supervision of the subordinate employee to the Office of Institutional Equity. Labor Relations and the applicable dean or vice president will determine whether the conflict of interest can be eliminated through termination of the situation of authority.  The final determination will be at the sole discretion of the relevant dean or vice president.

2.  If an Amorous Relationship Occurs or has Occurred between a Supervisor and  their Subordinate Employee

    If, despite these warnings, a University employee enters into an amorous relationship with someone over whom they have supervisory, decision-making, oversight, evaluative, or advisory responsibilities, that employee must disclose the existence of the relationship immediately to the Office of Institutional Equity. Labor Relations and the applicable dean or vice president will determine whether the conflict of interest can be eliminated through termination of the situation of authority.  The final determination will be at the sole discretion of the relevant dean or vice president.  In most cases, it will be likely that an acceptable resolution to the conflict of interest will be possible.  If the conflict of interest cannot be eliminated, the supervisor's employment standing may need to be adjusted.  In addition to the amorous relationship itself, a supervisor's failure to report the existence of the relationship with a subordinate employee is also a violation of this Policy.  The University encourages immediate self-reporting, and will consider this factor in the context of any resolution that may be able to be reached.

**XI.** <u>**PREVENTION, AWARENESS AND TRAINING PROGRAMS**</u>

The University is committed to the prevention of Prohibited Conduct through regular and ongoing education and awareness programs. Incoming Students and new Employees receive primary prevention and awareness programming as part of their orientation, and returning Students and current Employees receive ongoing training and related education and awareness programs. The University provides training, education and awareness programs to Students and Employees to ensure broad understanding of this Policy and the topics and issues related to maintaining an education and employment environment free from harassment and discrimination.

For a description of the University's Prohibited Conduct prevention and awareness programs, including programs on minimizing the risk of incidents of Prohibited Conduct and bystander intervention, see the University's annual Clery reports (found online at: http://publicsafety.uconn.edu/police/clery/about-clery/uconn-and-the-clery-act/ ).

**XII.** <u>**OBLIGATION TO PROVIDE TRUTHFUL INFORMATION**</u>

All University community members are expected to provide truthful information in any report, investigation, or proceeding under this Policy. Submitting or providing false or misleading information in bad faith or in an effort to achieve personal gain or cause intentional harm to another in connection with an incident of Prohibited Conduct is prohibited and subject to disciplinary sanctions under *The Student Code* (for Students), The Code of Conduct (for Employees), and any other applicable and appropriate University policy or policies. This provision does not apply to reports made or information provided in good faith, even if the facts alleged in the report are not later substantiated.

**XIII.** <u>**RELATED POLICIES**</u>

    A. <u>STUDENTS</u>

    *Responsibilities of Community Life: The Student Code:*
    http://www.community.uconn.edu/student_code.html

    B. <u>EMPLOYEES AND THIRD PARTIES</u>

    Policy Statement: People With Disabilities: http://policy.uconn.edu/?p=419
    Protection of Minors and Reporting of Child Abuse and Neglect Policy:
    http://policy.uconn.edu/?p=6754
    Non-Retaliation Policy: http://policy.uconn.edu/?p=415
    Policy Statement: Affirmative Action and Equal Employment Opportunity:
    http://policy.uconn.edu/?p=102

Age Act Policy: http://policy.uconn.edu/?p=2007
Code of Conduct (employees): http://policy.uconn.edu/?p=140
Code of Conduct for University of Connecticut Vendors:  http://policy.uconn.edu/?p=2718
Policy on Employment and Contracting for Service of Relatives:
http://policy.uconn.edu/?p=357

## XIV.    POLICY REVIEW

This Policy is maintained by the Office of Institutional Equity (OIE). The University will periodically review and update this Policy and will evaluate, among other things, any changes in legal requirements, existing University resources, and the resolution of cases from the preceding year (including, but not limited to, timeframes for completion and sanctions and remedies imposed).

rev. 07/01/2019

Exhibit P.



**Division of Student Affairs**
Community Standards

**Sexual Misconduct Cases Involving a Student Respondent**

**Introduction**
Alleged acts of sexual misconduct by University of Connecticut students are managed by the Office of Community Standards through *Responsibilities of Community Life: The Student Code* (*The Student Code*). *The Student Code* describes the process for handling complaints of alleged student misconduct. Prohibited acts are outlined in *Responsibilities of Community Life: The Student Code* (Part III.B.) and the *University of Connecticut Policy Against Discrimination, Harassment, and Related Interpersonal Violence* (Part IX). The documents may be found at:

- *The Student Code*: http://community.uconn.edu/the-student-code-preamble/
- *University Policy Against Discrimination, Harassment, and Related Interpersonal Violence*: http://policy.uconn.edu/2015/12/29/policy-against-discrimination-harassment-and-related-interpersonal-violence/

The information contained in this document provides additional information regarding sexual misconduct referrals. Individuals are strongly encouraged to read *The Student Code* to fully understand the process and their rights.

**Definitions**
A full list of definitions regarding the student conduct process can be found in *The Student Code*. For the purposes of this document, four are highlighted and expanded upon below:

- **Complainant** means any person who believes that said person has been a victim of another student's misconduct. If the complainant is a student, that student will have the same rights under *The Student Code* as are provided to the respondent, even if another member of the University community referred or reported the allegation itself.
  - A person can proceed with a complaint through Community Standards and participate in the student conduct process. If, at any time, the complainant decides to discontinue further participation in the student conduct process, Community Standards, based on the amount of information known and possible impact on the community, may still continue with the student conduct process.
  - A person can choose not to provide Community Standards with any additional information at the time and request Community Standards to not investigate. By making this request, the complainant needs to understand that the University's ability to respond to the initial complaint may be limited. A person may request to participate in the student conduct process or provide more information at a future time. The University will make a decision on whether they need to move forward with investigating the incident based on the amount of information known and possible impact on the community.
- **Respondent** means any student accused of violating *The Student Code*.
  - The respondent will be notified of the allegation and have the opportunity to respond and provide information regarding the allegation.
  - If the respondent chooses to not participate in the student conduct process, the process will continue without the person's involvement.
- **Support person** means any person who accompanies a respondent or complainant for the limited purpose of providing support and guidance. A support person may not directly address the hearing body, student conduct officer(s), question witnesses, or otherwise actively participate in the student conduct process, including hearings.
  - A support person cannot serve in a dual role such as a serving as both a support person and a witness.
- **Witness** means any individual who has direct knowledge of an incident. Character witnesses are not part of the student conduct process.

**Interim Actions and Remedial and Protective Measures**
Upon receiving a report of sexual misconduct, Community Standards may initiate an interim administrative action(s) as allowed by *The Student Code*. An interim administrative action is a necessary restriction(s) on a student prior to a student conduct resolution. Such action may be taken when, in the professional judgment of a University official, a threat of imminent harm to persons or property exists. Interim administrative action is not a sanction. It is taken in an effort to protect the safety and well-being of the respondent, of the complainant, of others, of the University, and/or

of property. Interim administrative action is preliminary in nature; it is in effect only until there is a resolution of the student conduct matter.

The Title IX Coordinator or the Dean of Students Office may also impose remedial and protective measures such as academic accommodations, housing arrangements, etc. Those are described in the *University Policy Against Discrimination, Harassment, and Related Interpersonal Violence*.

**Investigation**
Upon receiving a complaint, a student conduct officer from Community Standards will determine if a complaint alleges or addresses a potential violation of *The Student Code*. If so, Community Standards will immediately begin a fair and impartial investigation and strive to reach a resolution within thirty-five business days of notification; however, there are circumstances that may extend this resolution timeline (e.g., gathering witness information, scheduling, holding an administrative hearing).

The respondent and complainant may provide information in person and/or submit a written account, provide the names of incident witnesses (individuals with direct knowledge of the incident) for possible interviews with the student conduct officer, provide witness statements and any documentation that may be relevant to the facts of the incident. The student conduct officer will make a reasonable effort to obtain supporting documentation regarding the incident from other University entities or other resources. Documentation will be shared with the respondent and complainant.

Community Standards will provide regular updates as to the progress of the investigation to the complainant and the respondent.

**Determination of Facts Relative to an Alleged Violation**
Upon completion of the investigation, the student conduct officer, applying a preponderance of the evidence (more likely than not) standard, will determine if any violations of *The Student Code* occurred.

**Resolution**
After reviewing the incident and the investigation with the respondent and complainant, if any, the student conduct officer will determine whether the case may be resolved by way of an administrative agreement/case resolution form or an administrative hearing. A student who agrees to resolve any violation(s) without an administrative hearing shall have no right to appeal.

Either the complainant and/or respondent, can request an administrative hearing. If the resolution will be through an administrative hearing, the complainant, if any, will have the same rights as the respondent as indicated in *The Student Code*. The student conduct officer or hearing body will, in writing, disclose to the alleged victim of any crime of violence, non-forcible sex offense, or sexual harassment the results of the conduct matter regarding factual determination(s) and sanction(s) that specifically pertain to the alleged victim.

**Sanctions**
If the respondent is found responsible for committing sexual misconduct and therefore, in violation of *The Student Code,* appropriate sanctions will be imposed. Sanctions are determined by the seriousness of the violation, precedent for similar violations, and any existing aggravating and/or mitigating factors.

The University has four major sanctions: Warning, University Probation, University Suspension, or University Expulsion. When a student is found responsible for a violation(s), one of these is imposed. It is highly unlikely that a student found responsible for sexual misconduct would receive the sanction of a University Warning. The precedent regarding sexual assault is University Expulsion. A student may receive additional sanctions related to housing, student privileges, educational interventions, etc.

**Privacy versus Confidentiality**
To the extent possible, if a student makes a formal report about an act of sexual misconduct to Community Standards, Community Standards has an obligation to investigate the complaint. Community Standards will protect the privacy of all parties to a complaint of sexual misconduct but Community Standards cannot promise confidentiality.

**Retaliation**
Retaliation against a person for filing a complaint, or against witnesses for providing a statement during an investigation, is prohibited and is a violation of *The Student Code*.

**UConn Police**
It is important to note that the University of Connecticut student conduct process is different than the police process (either University of Connecticut Police or State Police). The University of Connecticut Police are located at 126 North Eagleville Road, Storrs, CT, and the phone number is 860-486-4800 (911 for emergencies). If the incident occurred off-campus, you can contact Connecticut State Police, Troop C, 860-896-3222.

If you are the victim of a sexual assault you can report it to the UConn Police Department at any time of the day or night, 365 days a year. When you report a sexual assault to the police, you will be treated with compassion and courtesy and officers will explain the police investigative process to you. After the initial report is made, a highly trained Special Victims Unit Officer will do a follow-up interview to better understand what happened. Investigators may collect evidence from you which includes the clothing you were wearing at the time, bedding (if applicable), etc. We can arrange transportation to a medical facility for a SAFE exam (Sexual Assault Forensic Exam) with a medical professional as well as a meeting with a member of the Sexual Assault Crisis Center of Eastern Connecticut which provides free and confidential services to victims of sexual assault and abuse. If necessary, we can also assist in locating a safe, alternative place to stay. The department emphasis a trauma informed approach; therefore, we will move at whatever pace works for the victim.

**Criminal Proceedings**
University student conduct proceedings may be instituted against a student without regard to the pendency of civil or criminal litigation in court or criminal arrest and prosecution resulting from the same or related conduct. Proceedings under *The Student Code* may be carried out prior to, simultaneously with, or following civil or criminal proceedings off-campus at the discretion of the Director of Community Standards. Determinations made or sanctions imposed under *The Student Code* shall not be subject to change because criminal charges arising out of the same facts giving rise to violation of University rules were dismissed, reduced, or resolved in favor of or against the defendant in the criminal matter.

7/10/2017