UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE,<br>          PLAINTIFF<br><br>vs.<br><br>UNIVERSITY OF CONNECTICUT, ET AL.,<br>          DEFENDANTS. | Civil Case No. 3:20-cv-00092-MPS<br><br><br>DATE: March 6, 2020 |

**MEMORANDUM IN SUPPORT OF**
**PETITION FOR REASONABLE ATTORNEY'S FEES AND COSTS**

In compliance with the Court's Order of February 11, 2020 (Dk#30), as modified on February 20, 2020 (Dk#34), Plaintiff John Doe respectfully submits this memorandum of law in support of his petition for an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988(b) and District of Connecticut L.R. 54(a).

## I.   INTRODUCTION

Plaintiff's counsel, Attorney Michael Thad Allen, represented John Doe in the above-captioned case and in the underlying campus administrative proceedings, which began on or around September 16, 2020.  As set forth in Plaintiff's First Amended Complaint, the University of Connecticut ("UConn") (acting through state actors named as co-Defendants) refused to follow its own rules, refused to accord John Doe due process of law, and refused to abide by the law of Title IX of the Education Amendments of 1972.  This resulted in John Doe's unfair expulsion, commuted to a so-called "suspension" of two years, after which John Doe would be required to reapply to UConn.  (Dk#15.)

Plaintiff's lawsuit ended in settlement with a Consent Order (Dk#30), which the Court entered following its Temporary Restraining Order.  (Dk#18.)  The Consent Order accomplished substantial goals of Plaintiff's litigation as set forth below, and entitles Plaintiff, as prevailing party, to recover reasonable attorney fees and costs under 42 USC § 1988(b).

1

**A. The Unfair UConn Process for which John Doe Sought Counsel to Defend His Civil Right to Due Process, His Statutory Right to Be Free of Gender Discrimination and Bias, and His Contract Right to Have UConn Follow its Own Rules**

John Doe was accused of sexual misconduct on or around September 16, 2020 by UConn, based on allegations of a fellow student Jane Roe.  The underlying events giving rise to that accusation have been set forth in Court papers in detail.  John Doe has insisted, with supporting evidence and witnesses, that his sexual encounter with Jane Roe was consensual.

UConn used a "single investigator model" to investigate the allegation.  One administrator was set up as detective, prosecutor, judge, and jury to decide John Doe's fate and the future of his education.  This single investigator was Defendant Brian Goepfrich.

The unfairness of the proceedings quickly became evident.  In violation of UConn's own policies, Goepfrich refused to accept statements from John Doe's witnesses submitted in his own defense, denied him access to the allegations against him, and did not provide notice of the charges against him.  And as presented to the Court in the telephonic hearing on Plaintiff's Emergency Motion for Temporary Restraining Order, UConn's contract violations were intertwined with evidence demonstrating Defendants' bias and breach of due process.  (See Transcript of Telephonic Status Conference, January 23, 2020 at 11:1-12:4 (identifying UConn's breach of policy in denying Plaintiff the right to submit witness statements and its defense).)

Defendant Goepfrich issued a report with findings and recommendation of sanctions against John Doe on November 14, 2019 finding John Doe guilty of sexual assaulting Jane Roe (the "Judgment").  In reaching his Judgment, Goepfrich had systematically eliminated exculpatory evidence.  Goepfrich also denied John Doe any opportunity to question adverse witnesses and eliminated one witness entirely, whom John Doe had indicated had exculpatory

information.  Goepfrich acted, in other words, not as an independent and unbiased investigator but as an over-zealous prosecutor who bent the rules to gain a conviction.

Goepfrich also found John Doe guilty of "endangering behavior."  John Doe never received notice of this latter charge.  It was especially surprising given that the events at issue had occurred back on April 5/6, 2019.  From that time until John Doe was ordered to leave campus on December 16, 2019, UConn did nothing to separate John Doe from Jane Roe.  Jane Roe had gone about her business and education at UConn.  At no time did UConn Institute any "interim measures" by issuing, for example, no contact orders or rearranging the schedules of the students involved to protect one from the other.  There was no evidence that Jane Roe's educational activities had been interrupted or "endangered."  She simply continued her studies.  She and John Doe even worked in the same African American Cultural Center as work-study students without incident.  The only evidence of disruption occurred when Jane Roe incited her friends to threaten John Doe and his friends.  John Doe's friends received messages like, "yall niggas [sic.] … should beat his [John Doe's] ass."  UConn did nothing to curb these threats.

Once Goepfrich handed down his Judgment, it was subject only to a very narrow review by a UConn Hearing Board.  Under UConn's policy, the Hearing Board is constrained to affirm the Judgment of the single investigator on any "sufficient evidence" or "rational basis."  The UConn Hearing Board sat, in other words, not to assess the evidence, but merely to confirm Goepfrich's prosecutorial Judgment on any possible ground, not on the "preponderance of evidence," but on the standard used to review the judgment of a jury verdict.  See e.g. *State v. Bradley*, 39 Conn. App. 82, 90-91, 663 A.2d 1100 (1995) (explaining standard for overturning jury verdict limited to "the ground of insufficient evidence" and "whether the jury's inferences drawn [from the evidence] were so unreasonable as to be unjustifiable").

The unfairness characterizing Goepfrich's prosecution of John Doe continued before the UConn Hearing Board, which convened for the first-level appeal of the Judgment.  At a hearing on January 16, 2019, John Doe brought witnesses to testify about the following:

> Witness 1: prepared to testify that John Doe was not "falling down" drunk at the party of April 5, 2019, demonstrating Jane Roe's lack of credibility.

> Witness 2: prepared to testify that John Doe was not "falling down" drunk at the party of April 5, 2019, demonstrating Jane Roe's lack of credibility.

> KW: whom Goepfrich refused to interview, prepared to testify that he had witnessed Jane Roe's sexual movements in the car as well as her solicitation of John Doe to come to her dorm.

> FW: prepared to testify that he had witnessed Jane Roe's sexual movements in the car as well as her solicitation of John Doe to come to her dorm, evidence that Goepfrich had excluded from his judgment.

> JM: prepared to testify that he had witnessed Jane Roe solicit John Doe to come to her dorm and to give a timeline of Jane Roe's apparent visit to JT's dorm room door.

UConn's hearing officers, Alisa Geller and John Armstrong, excluded all of John Doe's witnesses except JM.  When John Doe objected, Hearing officer John Armstrong retorted that there could be no objections because UConn's campus court was not supposed be a legal process.

Shockingly, even at hearing on John Doe's Motion for Temporary Restraining Order, counsel for UConn maintained that John Doe's witnesses were irrelevant.  The Court pointed out that the witnesses were relevant to the crucial issue of credibility:

> the issue at any hearing like this is the credibility of the two critical players, the complainant and the respondent.  And so just focusing on her [Jane Roe] for a minute, her credibility was very much in issue.  In my understanding is that she denied to the investigator that she had initiated sexual contact in the car.  Am I right about that? …  I mean it would have been appropriate for the investigator to ask her about that.  Do you not agree?

(Transcript of Telephonic Status Conference ("Transcript") at 15: 5-12; 16:6-7.)

But UConn responded:

> [The] response to your question then, Your Honor, would be[:] the best evidence of her credibility was her own conflicting or contradictory statements. And any evidence that the other witnesses may have had of what occurred in the car isn't going to give the investigator or hearing officers any more information about her credibility.

(Transcript at 16:21-17:1.)  Confronting this and UConn's other revelations about how it assesses credibility, the Court finally responded, "Oh, come on.  I thought you were going to be serious about this.…  That's not a serious answer, with all due respect."  (Transcript at 21:8-13.)

Yet the position UConn took in the hearing was entirely consistent with the policies announced and practiced by its Title IX Office and personnel.  As published on its website and promoted by its Title IX Coordinator, its policy is to "support [presupposed] victims" and "believe [presumptive] survivors."  In Court, UConn's counsel admitted that UConn proposed to believe the complainant Jane Roe regardless of John Doe's evidence and would defend this position even in the face of legal challenge.  That is exactly how the unfair process against John Doe had played out and why legal representation was and is crucial to him at every step along the way.

No witnesses that Jane Doe alleged supported her case were ever eliminated by Goepfrich.  Although Jane Roe attended the hearing with her advisor, no other witnesses who supported Jane Roe's allegations were required to attend.  Everything they said, including hearsay, was accepted, but they were placed beyond John Doe's ability to challenge.

Predictably, the Hearing Board affirmed Goepfrich's Judgment.  John Doe was expelled on the spot.  The Hearing Board instructed John Doe, at approximately 6:00 p.m. on the night of December 16, 2019, at a time when the campus was deserted for Christmas break, that he could no longer even return to his dormitory to collect his belongings.

John Doe's second-level appeal was also denied, except for the commutation of his expulsion to a two-year suspension, after which he was required to reapply to UConn.  Even if John Doe were to regain admission to UConn, he would still have to reapply to the business school in which he is majoring.  He was otherwise on course to graduate in 2020.

### B.  Allen Law LLC's Pro Bono Representation of John Doe

A founding member of Families Advocating for Campus Equality ("FACE"), a national organization started by the parents of unfairly expelled and falsely accused students from universities and colleges across the country, referred Plaintiff to Allen Law LLC in early September 2019.  (Allen Aff., ¶ 12.)  FACE indicated that Plaintiff and his family had limited means but in dire need of representation after being accused of sexual misconduct at the University of Connecticut.  (Id.)

Both of Plaintiff's parents are CNA's without financial resources other than their modest paychecks.  (Allen Aff., ¶ 14.)  Allen Law LLC initially agreed to represent Plaintiff at a reduced rate.  (Id., ¶ 14.)  Nevertheless, by November 2019, Plaintiff exhausted his and his family's financial resources to pay for legal services.  (Id., ¶ 14.)  Due to the seriousness of UConn's violations from the beginning of the representation, Attorney Allen had to prepare both the record and his client for the eventual lawsuit filed in this Court on January 20, 2020.  (Dk#1; Affidavit of Attorney Michael Thad Allen ("Allen Aff.," ¶¶ 16-20.)  Attorney Allen also engaged a paralegal to research the biases of University of Connecticut administrators.  (Id., ¶ 34-35.)

Attorney Allen's legal services included drafting and sending demand letter a (a so-called Gebser letter in the specialized parlance of Title IX litigation).  (Id., ¶ 20.)  This was sent to UConn on December 10, 2019.  (Id.)  Attorney Allen sent Megan Buda, Director of UConn's Community Standards Office, President Thomas Katsouleas, and the UConn Board of Trustees a

letter requesting that UConn abide by its own policies, by the Constitution of the United States, and other federal law.  (Id.)  Attorney Allen pointed out Goepfrich's many abuses and breaches of UConn policies and his violation of John Doe's due process rights as well as the law of Title IX.  UConn's General Counsel Nicole Gelston responded with little more than a form letter. Attorney Gelston characterized Goepfrich's abuses a process and constitutional violations as mere disputes over "weighing" the facts.  (Id.)

After Plaintiff's unfair expulsion on December 16, 2019, it was clear that, for purely financial reasons, Plaintiff would have no further legal options, despite his strong claims arising from his due process rights, his right to be free of discrimination on the basis of gender under Title IX, and other claims.  (Id., ¶ 14.)  Therefore, on or around January 10, 2020, Plaintiff entered into a new engagement with Allen Law LLC for pro bono representation on the condition that Allen Law LLC would recover its reasonable fees at a rate of $450 an hour out of any settlement or judgment.  (Id, ¶ 15.)  Had Plaintiff been unable to prevail, Allen Law LLC assumed the entire risk.  (Id.)  Allen Law LLC would have recovered no compensation for the legal services of Attorney Allen.  (Id.)

C.  **The Lawsuit against UConn Results in a Temporary Restraining Order under the Heightened Mandatory Injunction Standard; and the Court Enters the Consent Order Achieving the Significant Legal Aims of John Doe**

Fortunately, the above-captioned lawsuit quickly achieved significant goals for John Doe in litigation.  John Doe filed suit on January 20, 2020, the day before UConn's spring 2020 semester.  (Dk#1.)  John Doe's final, second-level appeal in UConn's administrative proceedings had been denied only six days before (January 14, 2020).

John Doe alleged due process claims under the Fifth and Fourteenth Amendment to the United States Constitution under 42 USC § 1983, violations of Title IX of the Education

Amendments of 1972, 20 USC § 1661 et seq., and claims sounding in common law breach of contract.  (Dk#1.)  Simultaneously, John Doe filed his Emergency Motion for Temporary Restraining Order and Preliminary Injunction with supporting papers.  (Dk#2, 2-1, 2-2, 2-3, 2-4.)  Because of the confidential nature of the student disciplinary proceedings involved, which are protected by, among other things, the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g; 34 CFR Part 99, John Doe also filed a Motion to Seal and a Motion to Proceed Anonymously.  (Dk#3, 4.)

John Doe filed a First Amended Complaint January 23, 2020 to add parties capable of implementing relief, as state actors, so that the Court could issue its Temporary Restraining Order ("TRO").  (Dk#15).  This Court entered the TRO that same day under the heightened standard for mandatory injunctions requiring "a clear or substantial likelihood of success on the merits in addition to the showing of irreparable harm."  (Dk#18 at 2 (quoting *North American Soccer League, LLC v. United States Soccer Federation, Inc*., 883 F.3d 32, 37 (2d Cir. 2018).)

Shortly after the TRO entered, Defendants quickly approached Attorney Allen to negotiate a resolution.  UConn offered for the first time to change its procedures and provide significant safeguards for fair process.  The result was Defendants' Amended Motion for Consent Order filed on February 10, 2020, with Plaintiff's consent, which the Court granted. (Dk#29, 30.)

The Consent Order achieved substantial goals of Plaintiff's litigation:

1)  John Doe's two-year suspension was vacated.  Notice placed in his transcript related to the original administrative hearing (Hearing Board) was removed from his transcript.  (Dk#30, ¶ 3.)

2) Defendants agreed to hold a new hearing in a fair and impartial manner, with new hearing officers.  (Id., ¶¶ 4, 6 and Exhibit A, ¶ 2.)

3) The new hearing shall be *de novo*; the hearing will not be held under the extremely restrictive standard of review set by UConn's unconstitutional policy.  (Id., ¶ 7.)

4) Defendants agreed to permit all witnesses proposed by John Doe to provide testimony during the hearing, and agreed to permit all adverse witnesses, including the student conduct investigator, Defendant Brian Goepfrich, to be subjected to questions.  (Id., ¶¶ 9, 10.)

5) Should John Doe be found responsible, he shall be entitled to reimbursement of tuition for spring semester 2020.  (Id., ¶ 13.)

Defendants made further concessions to John Doe's litigation goals in an attached Exhibit A to the Consent Order, which was to be shared with the new hearing officers.  These included:

1) An instruction on the assessment of credibility:

   Relevant evidence of a witness' and/or party's credibility or lack of credibility should be considered as a whole over the course of all events presented to the hearing panel and based on all information about the witness and/or party presented during the hearing.

   (Dk#30, Ex. A, ¶ 3.)

2) An instruction on de novo review, including an instruction not to defer to any assessments of credibility made, or any findings and conclusions reached, by the student conduct investigator Defendant Brian Goepfrich.  (Id., ¶ 6.)

3) An instruction that the panel shall not decline any questions to the witnesses unless they are deemed unduly inflammatory or entirely irrelevant to the issue before them, in which case the hearing panel must state for the record its reasons for excluding the question.  (Id., ¶ 8.)

9

4) The requirement that the hearing panel provide the rationale for its decisions and sanction (if any).

With this Exhibit A, the Consent Order provided significant protections for due process rights that John Doe did not and could not enjoy before suing UConn.

By requiring an unbiased decision maker under a de novo review standard, the Consent Order granted significant protection against the Title IX violations alleged in John Doe's Complaint as well as remedy for his breach of contract claims.

In achieving this result, all of John Doe's claims were intertwined. For example, the Court considered evidence of UConn's failure to abide by its own policies and rules in establishing the likelihood of success on the merits of the due process violations, where UConn denied John Doe the right to submit statements from witnesses on his behalf as expressly promised by UConn's Student Code. (See *supra*.)

Finally, the Consent Order provides:

> The University acknowledges that by virtue of this Consent Order the Plaintiff asserts that he is a "prevailing party" pursuant to Section 42 U.S.C. § 1988(b). The University takes no position and will defer to this Court's judgment on that issue. The University reserves the right to object to the amount and reasonableness of any application for attorney's fee made to this Court by the plaintiff. The University also reserves the right to appeal from any decision by this Court regarding the amount and reasonableness of attorney's fees.

(Dk#30, ¶ 14.)

## II. LEGAL SERVICES RENDERED TO JOHN DOE

As set forth in the Affidavit of Michael Thad Allen, legal services rendered to John Doe may be divided into four phases: 1) the first underlying administrative process; 2) preparation of the lawsuit and its eventual settlement; 3) John Doe's petition for reasonable attorney fees and costs; 4) John Doe's representation on rehearing. (Allen Aff., ¶¶ 16-39.)

10

The first phase in which Attorney Allen presented John Doe in the underlying administrative process began on or around September 28, 2019 and concluded with UConn's denial of his appeal and commutation of his sanction on or around January 14, 2020.  (Allen Aff., ¶¶ 16-23.)  This involved 74.6 hours of billable attorney time, documented in the contemporaneous business records of Allen Law LLC submitted to this court as **Exhibit 2** to the Allen Affidavit.  (Allen Aff., ¶ 23; **Ex. 2** at 1-6.)  Attorney Allen has also provided timesheets separating the individual phases of litigation.  (Id., **Ex. 2** at 7-12.)

The reasonable market rate for an attorney of comparable experience to Attorney Allen in a case like this, as attested to by the Affidavit of Attorney Tara Knight, the Affidavit of Attorney Avery Friedman, and the Affidavit of Attorney Andrew Feinstein, is at least $450 an hour.  (Attorney Friedman Affidavit, ¶ 26: Attorney Feinstein Affidavit, ¶ 10, Attorney Knight Affidavit, ¶ 15.)  These attorneys have accumulated over a century of legal experience at the highest level of practice, including billing practices.  (Id.)

Therefore, the total value of compensable legal services at $450 an hour, as documented by the business records of Allen Law LLC, is

............................................................................... $33,570.00.

The second phase overlapped with the first phase when it became evident that UConn's unfair process would deprive John Doe of his education.  Attorney Allen began preparing a complaint and supporting papers against UConn on or around January 6, 2020.  (Allen Aff., ¶¶ 24-31.)  Phase 2 concluded with the negotiation of the Consent Order, which achieved substantial goals of Plaintiff's litigation.  (Id., ¶ 30.)

11

This involved <u>76.7 hours</u> of billable attorney time, as documented in the contemporaneous business records of Allen Law LLC submitted to this court as **Exhibit 2** to Allen Affidavit.  (Allen Aff., ¶ 31; **Ex. 2** at 9.)

At the reasonable rate of $450 an hour, the total value of these compensable legal services is

$34,415.00

The third phase began with preparation for the fee petition, affidavits and other papers in its support.  Attorney Allen began the fee petition on or around February 13, 2020 and continued through the filing of this petition.  (Allen Aff., ¶¶ 32-34, **Ex. 2** at 11.)  This involved <u>15.3 hours</u> of work.  (Id., ¶ 34.)  It is expected that additional attorney time must be dedicated to this phase of the representation in anticipation of Defendants' opposition to this Petition.

At the reasonable rate of $450 an hour, the total value of these compensable legal services is

$6,885.00

The fourth phase began with Plaintiff's preparations for rehearing.  (Allen Aff., ¶¶ 35-39, **Ex. 1** at 12.)  This began on or around February 10, 2020 and involved preparations leading up to a scheduled rehearing on March 4, 2020.  (Id.)  and was continued until March 12, 2020 given the number of witnesses involved.  This phase has not yet concluded.  This has involved 32.<u>8 hours</u> of work to date.  (Id., **Ex. 1** at 12.)  Further work will be incurred through the conclusion of the hearing currently scheduled for March 12, 2020.

At the reasonable rate of $450 an hour, the total value of these compensable legal services is

$14,760.00

12

### III.   COSTS

In the representation of John Doe, Allen Law LLC and Plaintiff incurred the following compensable costs and expenses.  On or around November 25, 2019, Allen Law LLC engaged the services of paralegal Martin Maldonado who is an expert in and specialized in the research of institutions of higher education in the area of Title IX and other university misconduct proceedings.  (Allen Aff., ¶ 40.)  Mr. Maldonado is employed by several leading attorneys with a specialized, national practice in this area.  (Id.)

Mr. Maldonado completed 16.2 hours of work during this phase of plaintiff's representation, and he charges $100 an hour for the services.  (Id., ¶ 41, **Ex. 3** at 1.)  As documented by Mr. Maldonado's timesheet for the week of November 25, 2019, his services amount to

$1,650.00

During Phase 4, Mr. Maldonado completed an additional 5.5 hours of research at the rate of $100 per hour.  (Id., ¶ 41, **Ex. 3** at 2.)  As documented by Mr. Maldonado's timesheet for the week of February 14, 2020, these services amounted to

$550.00

Plaintiff's total expenses are therefore

TOTAL                                              $3021.61

### IV.   ARGUMENT

#### A. Plaintiff Is Entitled to Reasonable Attorney's Fees and Costs as Prevailing Party

Section 1988 "provides an incentive to individuals to act as 'private attorneys general,' playing a significant role in the enforcement of important congressional policies."  *Dowdell v. Apopka*, 698 F.2d 1181, 1189 (11th Cir. 1983) (quoting S.Rep. No. 1011 at 3, 94th Cong., 2d

13

Sess. (1976), reprinted in [1976] U.S. Code Cong. & Ad. News 5908, 5910).  Plaintiff is entitled

to attorneys' fees under 42 USC § 1988(b) as the "prevailing party":

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, **1983**, 1985, and 1986 of this title, ***title IX*** of Public Law 92–318 [20 U.S.C. 1681 et seq.], … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...

(Emph. added.)  "As the statutory language makes clear, a threshold determination for the court

is whether the [plaintiff] is a 'prevailing party.'"  *Chabad Lubavitch of Litchfield County, Inc. v.*

*Borough of Litchfield*, No. 3:09-CV-1419, 2018 U.S. Dist. LEXIS 86432, at *9 (D. Conn. May

23, 2018) (finding plaintiff was a "prevailing party" even upon partial success in the action).

"The question of whether a plaintiff is a 'prevailing party' within the meaning of the fee-

shifting statutes is a threshold question that is separate from the question of the degree to which

the plaintiff prevailed."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998).  "To

be considered a prevailing party … [i]t is sufficient that plaintiff succeed on any significant issue

in litigation which achieves some of the benefit the parties sought in bringing suit."  *Scelsa v.*

*City University of New York*, 827 F. Sup. 1073, 1075 (S.D.N.Y. 1993) (citing *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 50, 103 S. Ct. 1933 (1983)).

A Consent Order that achieves substantial legal relief for the Plaintiff, satisfies the

§ 1988(b) standard.  See e.g., *Slomovitz v. Enclave at Fairways Homeowners Assn.*, Civil Action

No. 18-16910 (FLW) (TJB), 2019 U.S. Dist. LEXIS 188077, at *6-7 (D.N.J. Oct. 30, 2019)

(collecting cases for principle that Consent Orders create "material alteration of the legal

relationship of the parties" necessary to permit award of fees under 1988(b)).  All that is required

is that Plaintiff "must be able to point to a resolution of the dispute which changes the legal

relationship between [him] and the defendant." *Texas Teachers*, 489 U.S. at 792, 103 L. Ed. 2d

at 877.  "[T]he burden is on the losing party to show that the settlement agreement clearly

14

waived" the right to attorney's fees.  *El Club Del Barrio, Inc. v. United Community Corps*., 735 F.2d 98, 99 (3d Cir. 1984).

Establishing Plaintiff is the prevailing party is easily shown here.  Without limitation, the Consent Order vacated Plaintiff's biased hearing and promised a new, unbiased hearing, new hearing officers, the ability to present all of witnesses, the ability to question the witnesses against him, a new standard of review owing no deference to the biased Judgment of Defendant Brian Goepfrich, and a strong instruction on credibility assessment, among other benefits.

As the Consent Order sets forth, UConn does not contest that Plaintiff is the "prevailing party," reserving only the right to challenge the amount and reasonableness of fees and cost. (Dk#30, ¶ 14.)

The Court should hold that Plaintiff is the "prevailing party" for purposes of § 1988.

**B.  Plaintiff's Reasonable Fees for Representing John Doe in Administrative Hearings at UConn Are Compensable**

The Supreme Court has held that mandatory administrative proceedings fall within the category of fees compensable under § 1988(b).  See *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 71, 64 L. Ed. 2d 723, 100 S. Ct. 2024 (1980) (concluding that Title VII prevailing party is entitled to recover attorneys' fees incurred from administrative proceedings because such proceedings are mandated by Title VII).  See also *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 581 (2d Cir. 2003) ("Section 1988 permits attorney's fees for time spent on administrative proceedings to enforce the [claim] prior to the litigation").

"To obtain the fees, the administrative proceeding must be useful and of a type ordinarily necessary to secure the final result obtained from the litigation.… In contrast, if the plaintiff 'could go straight to court' to assert his rights, administrative proceedings 'do not have the same

15

integral function.'" *Chabad Lubavitch*, 2018 U.S. Dist. LEXIS 86432, at *22-*23 (quoting

*Webb v. Bd. of Educ. of Dyer Cty.*, 471 U.S. 234, 241, 105 S. Ct. 1923, 85 L. Ed. 2d 233 (1985)).

Here, Defendants' underlying Title IX hearing process was mandated by Connecticut and

Federal Statute and implementing regulations.  Conn. Gen. Stat. 10-55m-q; 20 USC § 1092(f)

("Clery Act"); 34 CFR 668.46; 28 USC § 1681, et seq. ("Title IX"); 34 CFR 106.1-106.71.  The

final result John Doe sought was the same that he sought to obtain through litigation: a fair

chance to defend himself against accusations of sexual misconduct and a fair decision in

compliance with his civil rights and constitutional due process protections.

The Court should therefore award Attorney Allen's reasonable fees for his representation

of John Doe in the administrative proceedings at UConn.

### C.  Attorney Allen's Fee Is Reasonable and Should Be Paid at the Market Rate of $450 Per Hour

"In order to determine reasonable attorney fees pursuant to section 1988, a court must

calculate a 'lodestar figure,' which is calculated by multiplying a reasonable hourly rate by the

number of hours reasonably expended on a case." *Chabad Lubavitch*, 2018 U.S. Dist. LEXIS

86432, at *25 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 176

L. Ed. 2d 494 (2010) ("[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney

to undertake the representation of a meritorious civil rights case. . . . [T]he lodestar method

yields a fee that is presumptively sufficient to achieve this objective").)

Relevant considerations include:

   (1)  the time and labor required;

   (2) the novelty and difficulty of the questions;

   (3) the level of skill required to perform the legal service properly;

   (4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the attorney's customary hourly rate;

(6) whether the fee is fixed or contingent;

(7) the time limitations imposed by the client or the circumstances;

(8) the amount involved in the case and the results obtained;

(9) the experience, reputation, and ability of the attorney[];

(10) the 'undesirability' of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Plaintiff submits the Affidavits of Attorney Tara Knight ("Knight Affidavit"), Avery Friedman ("Friedman Affidavit"), and Andrew Feinstein ("Feinstein Affidavit") in support of his Petition.  Each of these attorneys attests to both the novelty and difficulty of Title IX and constitutional litigation against colleges and universities as well as the unique skill, experience, and reputation of Attorney Allen in this area of the law.  (Friedman affidavit, ¶¶ 11-12; Feinstein Aff., ¶¶ 7-9, Knight Affidavit, ¶ 3.)  This are of law is both rapidly developing and growing in demand.  (Id.)

Attorney Allen also attests in his Affidavit ("Allen Aff."), that he took Plaintiff's case on a pro bono/fee-shifter contingency basis, and his firm assumed the entire financial risk after November 2019 on the condition that Allen Law LLC would recover a reasonable rate of $450 an hour out of any settlement or judgment.  (Allen Aff., ¶ 15.)  Had Plaintiff been unable to prevail, Allen Law LLC would have taken nothing for Attorney Allen's legal services.  (Id.)

The Plaintiff's limited ability to pay is one factor in calculating an attorney's fees award. *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir. 1982).  Because cases such as

17

Plaintiff's rarely result in large damage awards, the fee shifter under §1988 is the only incentive to induce talented attorneys to represent clients such as Plaintiff.  (Allen Aff., ¶ 15.)  *Valley Housing Ltd. P'ship v. City of Derby*, Docket No. 3:06CV1319 (TLM), 2012 U.S. Dist. LEXIS 45246, at *7 (D. Conn. Mar. 30, 2012) ("A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case").

Attorney Allen also states that $450 per hour is his usual rate in cases such as Plaintiff's. (Allen Aff., ¶ 15.)  UConn's rush to expel John Doe imposed strict time constraints.  Although he was expelled on December 16, 2019 and ordered to depart campus immediately after his first-level appeal, Plaintiff had to wait until one week before the beginning of classes in the 2020 spring semester for UConn to hand down his final appeal.  In order to get Plaintiff back to class and protect his degree, Attorney Allen was compelled to generate Plaintiff's motion papers to file for a Temporary Restraining Order without waiting for the final appeal decision. (Allen Aff., ¶ 24-31.)

The total value to Plaintiff of this case cannot be reduced to a monetary figure.  Plaintiff's education is on the line, which UConn sought to terminate by violating his constitutional rights to due process.  Moreover, the potential harm to Plaintiff's reputation would have been indelible and lifelong.

The results obtained speak for themselves:  Plaintiff's expulsion was vacated, and the Consent Order entitles him to a new campus hearing with strong protections for due process and instructions for the fair evaluation of evidence.  The attention this case has gained in national media also demonstrated the public interest in the case.[1]

---

[1] Robbie Soave, Judge Upbraids UConn for Unfair Investigation, Reason, February 6, 2020, avail. at https://reason.com/2020/02/06/uconn-due-process-title-ix-unfair-sexual-misconduct/; Alleged sexual assault case at UConn puts school's enforcement of sexual misconduct rules on trial, Hartford Courant, January 25, 2020, avail. at https://www.courant.com/news/connecticut/hc-news-uconn-sex-misconduct-20200124-20200125-

Attorneys Knight, Friedman, and Feinstein also attest to the reputation, experience, and ability of Attorney Allen, who is uniquely qualified for litigation in higher education.  (Knight Affidavit, ¶¶ 9-14; Friedman Affidavit, ¶¶ 22-25; Feinstein Affidavit, ¶ 8.)  Attorney Allen graduated from Yale Law School in 2010 after teaching as a tenured professor of history at the Georgia Institute of Technology in Atlanta, Georgia.  (Id.; Allen Aff., ¶ 9.)  After law school he worked for the Honorable Ralph Gants, currently the Chief Justice of the highest court of Massachusetts, the Supreme Judicial Court.  (Id., ¶ 5.)  Attorney Allen brings to his representation of Plaintiff a knowledge of the internal workings of universities and their administration as well as expertise in higher education.  (Id., ¶ 9.)

As to "undesirability," "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant….  Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries.  This can have an economic impact on his practice which can be considered by the Court."  *Durrett v. Jenkins Brickyard, Inc*., 678 F.2d 911, 917 n.6. (11th Cir. 1982) (quoting *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 719 (5th Cir. 1974).

Finally, the last factor is awards in similar cases.  Plaintiff's counsel has been unable to identify cases in this District Court in which clients represented in student misconduct proceedings and litigation against universities resulted in fee petitions for Title IX or Due Process violations.  However, Attorney Andrew Feinstein states that based upon his 30 years of private practice as an education-rights attorney in Connecticut, the prevailing rate charged by

---

p4pt3k4rsre6dl22jw25yuwgaa-story.html; When a judge tells you twice in one week that you are violating students' constitutional rights, it may be time to listen, Foundation for Individual Rights in Education, January 24, 2020, avail. at https://www.thefire.org/when-a-judge-tells-you-twice-in-one-week-that-you-are-violating-students-constitutional-rights-it-may-be-time-to-listen/; Judge Rules for Male Student in UConn Misconduct Probe, US News and World Report, January 25, 2020, avail. at https://www.usnews.com/news/best-states/connecticut/articles/2020-01-25/judge-rules-for-male-student-in-uconn-misconduct-probe.

Connecticut law firms for litigation such as Plaintiff's case from 2015-2020 "is not less than $450 per hour." (Feinstein Aff., ¶ 11.) Attorney Avery Friedman, who has a national practice in the defense of civil rights, including Title IX and constitutional violations perpetrated by colleges and universities, states that Attorney Allen should be compensated in the range of $475 to $550. (Friedman Aff., ¶ 26.) Attorney Tara Knight, a trial attorney who has 30 years' experience representing criminal defendants as well as students at Yale University, University of New Haven, and Quinnipiac University, states that an attorney of Attorney Allen's experience and skill should be compensated at market rates of not less than $450-$550 per hour. (Knight Affidavit, ¶ 15.)

Given the unique nature of Attorney Allen's skills as a former tenured professor who brings to higher education law his familiarity with internal university administration and operations as well as the experience of a litigator, the Court should award reasonable fees at a market rate of not less than $450 per hour. Compare *Conn. State Dep't of Soc. Servs. v. Thompson*, 289 F. Supp. 2d 198, 205 (D. Conn. 2003), *underlying judgment rev'd on other grounds*, (2d Cir. 2008) (finding "plaintiffs' attorneys' specialized expertise in this arena was essential to the effective handling of the case" in adjusting upwards, up to $375 per hour ***in 2003 dollars***, despite statutorily capped fees under 28 U.S.C.S. § 2412 of the Equal Access to Justice Act).

As noted by Attorney Friedman, who supports Plaintiff's petition with his Affidavit, the 6th Circuit has upheld fee awards of over $795 per hour in civil rights cases. *Barrow v. City of Cleveland*, No. 1:16 CV 923, 2018 U.S. Dist. LEXIS 105912, at *6 (N.D. Ohio June 25, 2018), aff'd, (6th Cir. 2019). Comparable rates have been approved in the District of Connecticut. *In re Priceline.com, Inc*., No. 3:00-CV-1884, 2007 U.S. Dist. LEXIS 52538, at *15 (D. Conn. July

19, 2007) (awarding fees based on calculations of up to $770 per hour *in 2007 dollars*).  See also

*Messier v. Southbury Training Sch*., No. 3:94-CV-1706, 2015 U.S. Dist. LEXIS 39143, at *18

(D. Conn. Mar. 27, 2015) (denying defendant school's objections to 2015 market rates and

approving rates over protracted litigation of due process claim of up to $500 per hour for

attorneys and up to $200 per hour for paralegals); *Varlesi v. Wayne State Univ*., No. 10-14793,

2013 U.S. Dist. LEXIS 200154, at *7 (E.D.Mich. Aug. 14, 2013), *R&R adopted*, 2013 U.S. Dist.

LEXIS 42571 (E.D.Mich. 2013) ($400.00 per hour was "reasonable attorney fee" *in 2013 rates*

against university).

### D.  Plaintiff's Expenses and Costs

"Under normal circumstances, a plaintiff who prevails on a 42 U.S.C. § 1983 claim is

entitled to recover costs."  *Stanczyk v. City of N.Y*., 752 F.3d 273, 280 (2d Cir. 2014).  Further,

awards of such expenses are not limited by the standards used to evaluate expenses under 28

U.S.C. § 1920 or Federal Rule of Civil Procedure 54(d).  "Courts routinely award costs in excess

to those enumerated in section 1920, pursuant to section 1988.  *Chabad Lubavitch*, 2018 U.S.

Dist. LEXIS 86432 at *40 (citing *Kuzma v. I.R.S*., 821 F.2d 930, 933-34 (2d Cir. 1987)

("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone

costs are generally taxable under § 1988 . . . ."); *Tolnay v. Wearing*, No. 3:02-cv-1514, 2007 U.S.

Dist. LEXIS 79453, 2007 WL 3171284, at *1 (D. Conn. Oct. 25, 2007) (same)).

The expenses incurred in this case and sought pursuant to §1988(b) total

.............................................................................................................. $3,021.61

(Allen Aff., ¶¶ 40-42, **Ex. 3**.)  The largest portion of Plaintiff's costs and expenses as for services

of a paralegal specialized in Title IX and campus misconduct research and investigations.  (Id.,

¶¶ 40-42.)  Plaintiff incurred cost for 16.2 hours of paralegal services at the reasonable market

rate of $100 per hour in Phase 1 of this case.  (Allen Aff., ¶¶ 41, **Ex. 3** at 1.)  And Plaintiff

incurred an additional 5.5 hours of paralegal services in Phase 4 of this case.  (Allen Aff., ¶ 42,

**Ex. 3** at 2.)  See *Messier v. Southbury Training Sch*., No. 3:94-CV-1706, 2015 U.S. Dist. LEXIS

39143, at *18 (D. Conn. Mar. 27, 2015) (approving paralegal market rates of up to $200 an

hour); *Conn. State Dep't of Soc. Servs. v. Thompson*, 289 F. Supp. 2d 198, 206 (D. Conn. 2003)

(holding "experienced or specialized paralegals can command well over $ 100 per hour" in 2003

dollars).  Mr. Maldonado's paralegal fees of $100 per hour are also supported in the Feinstein

Affidavit, Friedman Affidavit, and Knight Affidavit.  (Friedman Affidavit, ¶ 27; Attorney

Feinstein Affidavit, ¶ 12, Attorney Knight Affidavit, ¶ 16.)

## V.   CONCLUSION

For the foregoing reasons, the Court should order Defendant University of Connecticut

and the individual defendants to pay Plaintiff's reasonable attorney fees and costs in the full

amount of Plaintiff's Petition:

| | |
|---|---:|
| Phase 1 Fees | $33,570.00 |
| Phase 2 Fees | $34,515.00 |
| Phase 3 Fees | $6,885.00 |
| Phase 4 Fees | $14,760.00 |
| Costs and Expenses | $3,021.61 |
| TOTAL | $92,751.61 |

Respectfully submitted,

/s/ Michael Thad Allen

Michael Thad Allen, Esq. (ct29813)
ALLEN LAW, LLC
PO Box 404
Quaker Hill, CT  06375
(860) 772-4738
m.allen@allen-lawfirm.com

for PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on the date specified in the caption of this document, I electronically filed the foregoing with the Clerk of Court, to be served on all parties of record via the CM/ECF system and by email on the following parties:

Attorney Nicole Gelston
General Counsel
University of Connecticut
Office of the General Counsel
343 Mansfield Road, Unit 1177
Storrs, CT 06269-1177

Mary Lenehan
Assistant Attorney General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
Attorney.General@ct.gov

/s/Michael Thad Allen

Michael Thad Allen