### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE,<br><br>     Plaintiff,<br><br>     v.<br><br>UNIVERSITY OF CONNECTICUT,<br>GREGORY BOUQUOT, MICHAEL GILBERT,<br>and BRIAN GOEPFRICH,<br><br>     Defendants. | No. 3:20cv92 (MPS) |

### RULING ON MOTION FOR ATTORNEY'S FEES

## I.  INTRODUCTION

In this action, the plaintiff, John Doe, challenged the fairness of disciplinary proceedings brought against him by the University of Connecticut ("UCONN") for alleged sexual assault, culminating in Doe's two-year suspension from the University.  I granted Doe's motion for a temporary restraining order ("TRO") and ordered UCONN to reinstate Doe for the Spring semester. ECF No. 18.  Shortly thereafter, the parties reached a settlement, and judgment entered when I granted a Consent Order proposed by the parties. ECF Nos. 30, 32.  Presently before the Court is Doe's motion for an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988. ECF No. 35 at 1.  Defendants oppose the motion.  I conclude that Doe is entitled to attorney's fees as a prevailing party but that the administrative proceedings involving the pre-litigation disciplinary hearing were not proceedings to enforce the civil rights laws and, therefore, are not a basis for attorney's fees under § 1988.  I also conclude that Doe's award of attorney's fees should be further reduced slightly based on other factors.  For the reasons set forth below, the motion for attorney's fees is GRANTED in part and DENIED in part.  .

1

## II.    BACKGROUND

In October, 2019, UCONN brought a disciplinary proceeding against Doe for alleged sexual misconduct. ECF No. 15 at 1.  A hearing was held on December 16, 2019, Doe was found responsible for the sexual misconduct, and Doe was suspended from UCONN for two years. ECF No. 15 ¶¶ 125, 135.  On January 20, 2020, Doe filed a Complaint, and on January 23, 2020 a four-count Amended Complaint, which is the operative Complaint and which includes four counts:  breach of contract, violation of due process under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, violation of Title IX, 20 U.S.C. § 1681, and breach of the covenant of good faith and fair dealing. ECF No. 15 at 31, 33, 36, 39.  The § 1983 claim alleged that UCONN had violated Doe's due process rights under the Fifth and Fourteenth Amendments  in the disciplinary proceeding. ECF No. 15 at 1.  Specifically, he alleged that UCONN "pre-judged [him] as guilty in a biased investigation and effectively threw him out of school on October 15, 2019 – *before* even completing its investigation into the allegations against him." *Id.* ¶ 3.  UCONN denied Doe of "notice of the charges against him and deni[ed] him a meaningful opportunity to be heard." *Id.* ¶ 4 (emphasis in original).  Doe was forbidden from "presenting exculpatory evidence and witnesses on his behalf, blocked [from cross-examining] witnesses against him," and subjected to "a biased process calculated to 'support the [presumed] victim' rather than determine the truth." *Id.*

The Amended Complaint alleges that UCONN's investigator issued a "Judgment" on November 14, 2019 that found Doe "responsible" for "sexual assault" with an added "guilty charge for 'endangering behavior." *Id.* ¶ 111.  Doe requested a review of the "Judgment at an administrative hearing offered under UCONN's Title IX Policy" and the hearing (hereinafter "First Hearing") took place on December 16, 2019 *Id.* ¶ 125.  At the First Hearing, Doe gave a

statement to the hearing board and the hearing board questioned Doe, but did not permit Doe to

present four of his five witnesses . *Id.* ¶¶ 125-26.  Doe objected that witnesses could provide

evidence relevant to his accuser's credibility, but was told that "campus court was not a court of

law and objections did not apply." *Id.* ¶ 127.  That same day, the hearing board affirmed the

Judgment. *Id.* ¶ 130.

> In the Amended Complaint, Doe sought the following relief:
>
> i. Declare Defendant University of Connecticut liable for breach of contract and in breach of the implied covenant of good faith and fair dealing;
> ii. Declare Defendant University of Connecticut in violation of Title IX of the Education Amendments of 1972;
> iii. Declare the University of Connecticut and Defendant Brian Goepfrich to have violated John Doe's Constitutional right to due process under 42 U.S.C. § 1983;
> iv. Order Defendant University of Connecticut to immediately restore John Doe to the UConn Class of 2020;
> v. Order Defendant University of Connecticut to expunge John Doe's transcript and college record of any reference to his wrongful sanctions and finding of "responsibility" for any and all sexual misconduct;
> vi. Order Defendant University of Connecticut to institute policies guaranteeing fair and equitable process for accused students;
> vii. Order Defendant University of Connecticut to pay all direct and indirect damages suffered by John Doe;
> viii. Order Defendants to pay John Doe's reasonable attorney fees and costs under 42 U.S.C. § 1988(b) and other applicable laws; and
> ix. Order such additional legal or equitable relief as the Court finds just and proper.

ECF No. 15 at 40-41.

When Doe filed his original complaint, he also filed a motion for a temporary restraining

order ("TRO") and preliminary injunction, asking the Court to order Defendants to "allow Doe's

immediate enrollment to rejoin the Class of 2020 and enjoin Defendants' interference with John

Doe's studies." ECF No. 2-2 at 41.  I held a telephonic status conference on January 23, 2020,

after which I issued an order indicating that I expected to grant the TRO. ECF No. 16.  I also

scheduled an evidentiary hearing on the motion for a preliminary injunction for February 11,

2020. *Id.*  That same day, I issued a ruling granting the TRO. ECF No. 18.  Prior to the

evidentiary hearing on the preliminary injunction, the parties filed a Motion for Consent Order,

which I granted. ECF No. 30.  Doe filed a motion for attorney's fees and costs pursuant to §

1988(b) asserting that he was a "prevailing party", and Defendants filed a memorandum in

opposition. ECF Nos. 35, 38, 39.  I describe the TRO ruling, the Consent Order, and the Motion

for Attorney's Fees in more detail below.

### A.  TRO

I granted the TRO on the basis of Doe's due process claim, finding that "[UCONN's]

disciplinary procedures hampered [Doe's] ability to present a meaningful defense…." *Id.* at 6.

Specifically, Doe was prohibited from presenting witnesses who were prepared to offer

testimony that would undermine the credibility of Doe's accuser. *Id.*  "UCONN also never gave

[Doe] an adequate opportunity to respond to or question [his accuser] or the other female

witnesses interviewed during the investigation." *Id.* at 8. "[G]iven the importance of credibility

evidence to this factual dispute, denying [Doe] the opportunity to respond fully to [his accuser]

and her witnesses heightened the risk of erroneous deprivation." *Id.* at 10.

Consequently, I

ORDERED that the individual defendants, their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them are ENJOINED from enforcing the Plaintiff's suspension stemming from the alleged sexual assault. Provided there are no independent reasons to prevent the Plaintiff from enrolling in the Spring semester (such as nonpayment), the defendants SHALL ALLOW the Plaintiff to enroll, to register for classes, to seek available University housing, and to exercise all the rights of a UCONN student.

*Id.* at 12.

### B.  Consent Order

After I granted the TRO, but before the hearing scheduled to address the preliminary injunction, Doe and Defendants entered into a Consent Order in which the parties agreed "to resolve all issues and claims raised and contained in [Doe's] Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Amended Complaint … and any and all pending disputes between them without further litigation." ECF No. 30 at 2.  The parties stipulated to, among other terms, the following terms: (1) Doe would withdraw his motions for TRO and preliminary injunction and the Amended Complaint; (2) the Court would retain jurisdiction to adjudicate alleged violations of the Consent Order ; (3) the sanction of suspension would be permanently vacated and notices on Doe's transcript relating to that sanction would be removed; (4) UCONN would hold a new hearing to consider the sexual allegations against Doe; (5) UCONN would select different hearing officers than those who presided over the December 2019 hearing, and the new hearing officers would be provided with written instructions as to procedure—attached to the consent motion as Exhibit A; (6) the hearing would be *de novo* and the panel would consider all evidence presented by the parties; (7) the panel would permit all witnesses proposed by the parties to provide testimony, and all such witnesses would be subject to questioning by the parties and the hearing panel (with the parties submitting questions to the hearing panel and the panel obliged to pose those questions unless deemed unduly inflammatory or entirely irrelevant); and (8) Doe would not challenge UCONN's final decision in a court action as long as the Defendants substantially complied with the Consent Order. *See generally* ECF No. 30 ¶¶ 1-19.

The Consent Order also provides that Defendants denied "all liability for the claims alleged in the Amended Complaint." *Id.* at 2.  Finally, the Consent Order contains the following provision regarding Doe's status as a "prevailing party":

[UCONN] acknowledges that by virtue of this Consent Order [Doe] asserts that he is a "prevailing party" pursuant to Section 42 U.S.C. § 1988(b). [UCONN] takes no position and will defer to this Court's judgment on that issue. [UCONN] reserves the right to object to the amount and reasonableness of any application for attorney's fee made to this Court by [Doe]. [UCONN] also reserves the right to appeal from any decision by this Court regarding the amount and reasonableness of attorney's fees.

*Id.* at 4.

Exhibit A attached to the Consent Order set out instructions for the new hearing officers, including how to consider witness credibility, what burden of proof to apply, what information and documents to consider, and prohibitions on ex parte communications. *Id.* at 8-9.

According to Doe's reply brief, after the rehearing at UCONN contemplated by the Consent Order, Doe was found "not responsible" for sexual misconduct. (ECF No. 39 at 1.)

## C. Motion for Attorney's Fees

Doe filed a motion for attorney's fees "as prevailing party" to recover reasonable attorney fees and costs under Section 1988(b). Doe's attorney, Michael Thad Allen of Allen Law LLC, seeks to recover fees for: 1) the first underlying administrative process phase; 2) preparation of the lawsuit and its eventual settlement ; 3) Doe's petition for reasonable attorney fees and costs; and 4) Doe's representation on rehearing. ECF No. 35-1 at 1, 11-12.

According to Doe's calculation, the total award for attorney's fees and costs amounts to $105,590.11. ECF No. 35-1 at 22, ECF No. 39 at 10. Doe arrives at that total by multiplying total hours spent (217.8 including the additional fees in Doe's reply to motion in opposition) by a rate of $450 per hour. Doe also seeks costs in the amount of $3035.11 ($2650 for the paralegal services of Martin Maldonado, plus $371.61 in itemized costs, plus $13.50 in costs listed in Doe's reply) ECF No. 35-1 at 13, ECF No. 35-9 at 1, ECF No. 39 at 10. In support of his fee motion, Doe has provided affidavits, ECF Nos. 35-2, 35-3, 35-4, 35-5, the curriculum vitae of

6

Allen, ECF No. 35-6, and time sheets setting forth dates, hours spent, descriptions of work, and the hourly rate. ECF No. 35-7.[1]

Defendants argue that the proposed fee award should be denied or reduced.  Under § 1988, I must first determine whether Doe is a prevailing party; as noted UCONN states in its motion that it takes no position on the prevailing party issue and will defer to the Court's judgment. ECF No. 38 at 2.  Assuming that Doe is a prevailing party, Defendants argue that the amount sought in attorney's fees should be reduced for the following reasons:

> 1) the plaintiff is not entitled to fees associated with the first disciplinary hearing; 2) the records do not provide sufficient detail to justify payment; 3) the amount of fees requested should be reduced by seventy-five percent due to the plaintiff's partial success; 4) any payment should be offset by the amount of fees already collected by the plaintiff's counsel from his client; 5) the hourly rate requested is not reasonable given the market rate, plaintiff's counsel's level of experience and the clerical nature of many tasks; 6) many of the fees sought for the second hearing are not reasonable; and 7) the fees claimed for the fees application must be reduced to be proportionate to the total award.

*Id.* at 1.

I address each of these arguments in turn.

## III.    LEGAL STANDARD

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b), provides in relevant part: "In any action or proceeding to enforce a provision of section[] … 1983 … the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs."  "Congress intended to permit the award of counsel fees only when a party has prevailed on the merits.  Therefore, in order to qualify for attorney's fees under § 1988, a

---

[1]  The time sheet is provided in two different formats – the first lists each entry chronologically, and the second also lists the entries chronologically, but breaks down the litigation into four different phases.  In large part, I have disregarded Doe's classification of phases, and focused on the descriptions of the time entries themselves.

plaintiff must be a prevailing party." *Farrar v. Hobby*, 506 U.S. 103, 113 (1992) (citations, alterations, and internal quotation marks omitted). The Supreme Court has given the term "prevailing party" a "generous formulation," under which a plaintiff who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit" is considered a prevailing party. *Id.*

Prevailing party status is not confined to plaintiffs who obtain a judgment on the merits. "[A]t a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792 (1989) (citation omitted). "Settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees" because they constitute a "court ordered change in the legal relationship between the plaintiff and the defendant." *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001) (holding that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees") (citations omitted).

Once a district court has established that the plaintiff is a prevailing party, the court "retains discretion to determine, under all the circumstances, what constitutes a reasonable fee…." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) (internal quotation marks omitted) (citing *Farrar*, 506 U.S. at 114).

## IV.    DISCUSSION

### A.  Prevailing Party

Doe is a prevailing party because the Consent Order, agreed to by the parties and approved by this Court, materially altered the legal relationship between the parties in favor of Doe. ECF No. 30 ¶ 2.  Doe was successful in achieving the relief he sought in the motion for temporary restraining order – an order requiring UCONN to allow Doe to enroll in courses for the Spring semester – and some of the relief he sought in his Amended Complaint— reinstatement at UCONN for the Spring semester, removal of any reference to the suspension from his transcript, and new, fairer procedures to adjudicate the allegations against him,[2] even though he did not achieve that result through final judgment following a trial. *See Hanrahan v. Hampton*, 446 U.S. 745, 756-57 (1980) ("The definition of prevailing parties is not limited to those who obtain a favorable final judgment following a trial.").

The Consent Order enabled Doe to enroll in the Spring semester, stipulated that "any notices" relating to the First Hearing resulting in his suspension had been removed from his transcript, and required UCONN to hold another hearing on the sexual misconduct allegations, one in which new hearing officers would follow new procedures in lieu of the procedures Doe had challenged on due process grounds in the Amended Complaint and TRO motion.  Among other things, the new hearing officers were required to permit all witnesses to testify and permit questioning of all witnesses, two points about which Doe had complained in his due process challenge.  Because the Consent Order effectively nullified Doe's suspension and required UCONN to make meaningful changes to its disciplinary hearing process for Doe's rehearing, it unquestionably "change[d] the legal relationship between [Doe] and the defendant." *Texas State Teachers Ass'n*, 489 U.S. 782, 792 (1989) (citation omitted).  And any suggestion that the

---

[2]  Although Doe secured the new hearing procedures for himself – not for all accused students as prayed for in the Amended Complaint, ECF No. 15 at 41 – the changes in process he won for himself surely qualify as "some of the benefit [he] sought" in bringing suit.  *Farrar*, 506 U.S. at 113.

change was de minimis or insignificant is belied by the change in outcome: While Doe was found responsible for sexual misconduct and penalized with a two-year suspension under the procedures that governed the First Hearing, he was found not responsible and allowed to complete his undergraduate education under the procedures mandated by the Consent Order. *See generally* ECF No. 30.

It is of no consequence that the Defendants did not admit to liability in the Consent Order. *See Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 604 ("Although a consent decree does not always include an admission of liability by the defendant … it nonetheless is a court-ordered change in the legal relationship between the plaintiff and the defendant.") (citations, alterations, and internal quotation marks omitted).  I also need not consider to what extent the TRO assessed the merits of Doe's case. *See R.G. ex rel. M.G. v. Minisink Valley Cent. Sch. Dist.*, 531 F. App'x 76, 79-80 (2d Cir. 2013) (concluding that Magistrate Judge correctly concluded that District Court's grant of a preliminary injunction did not render the plaintiff a prevailing party because the transcript of proceedings show that the court had issued the preliminary injunction merely to forestall irreparable harm pending consideration of the merits and had not actually made an "assessment of the merits.").  The terms of the Consent Order, which materially altered the legal relationship between the parties, are sufficient to establish that Doe is a prevailing party.

### B.  Fees for First Hearing

Having concluded that Doe is a prevailing party, I must determine the "reasonableness" of the requested fee award.  *See Webb v. County Bd. of Educ.*, 471 U.S. 234, 244 (1985).  Doe asserts that he is entitled to attorney's fees during a "first phase" that began in September 2019, encompassed the First Hearing, and  "concluded with UCONN's denial of his appeal and

10

commutation of his sanction [from expulsion to a two-year suspension] on or around January 14, 2020." ECF No. 35-1 at 11.  I disagree.  The first phase entailed a university disciplinary proceeding to defend against sexual misconduct allegations, not a statutorily mandated administrative proceeding "to enforce a provision of" Section 1983.  42 U.S.C. § 1988.  And although the cases applying Section 1988 permit the recovery of attorneys' fees incurred in such underlying proceedings where the prevailing party identifies the discrete portions of such fees that were useful and necessary to advance his Section 1983 claim in court, Doe has failed to identify those discrete portions.  Therefore, I decline to award fees for the 53.6 hours of time spent on the "first phase" administrative proceedings.

Section 1983 includes no requirement that a claimant pursue available state or other remedies before commencing proceedings in federal court. *Webb*, 471 U.S. at 241.  Thus, administrative proceedings that precede a federal lawsuit asserting a Section 1983 claim are not, themselves, part of an "action or proceeding to enforce the provisions of section[] … 1983," 42 U.S.C. § 1988, and generally do not warrant an award of attorney's fees.  In *Webb*, a "black elementary school teacher with tenure" in Tennessee was terminated and sought redress under a state statute that provided that "public school teachers may only be dismissed for specific causes.…" *Id.* at 236.  The statute also "guaranteed a hearing on charges warranting dismissal." *Id.*  The teacher, represented by counsel, "obtained a series of hearings" before the school board, but "the [b]oard had not provided him with written charges or a pre-termination hearing and … there was reason to believe that the [b]oard's action was racially motivated, [the teacher] …." *Id.* at 236-37.  The teacher brought an action in federal court under various civil rights statutes, including § 1983. *Id.* at 237.  After two years of discovery, "the case was settled by the entry of a

consent order awarding" the teacher damages and injunctive relief, including reinstatement as a teacher and removal of adverse comments in his employment file. *Id.*

The teacher filed a motion for attorney's fees under § 1988, but the Court concluded that "[a]dministrative proceedings established to enforce tenure rights created by state law simply are not any part of the proceedings to enforce § 1983, and even though [teacher] obtained relief from his dismissal in the later civil rights action, he is not automatically entitled to claim attorney's fees for time spent in the administrative process on this theory." *Id.* at 241 (footnotes omitted). The Court contrasted the "optional" nature of the underlying administrative process with the mandatory administrative process under Title VII, for which an award of attorneys' fees is allowed. *See Id.* at 240 (explaining that in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980) the Court held that § 706(k) of Title VII of the Civil Rights Act of 1964 "authorizes fees for work performed pursuing a state administrative remedy…."). Unlike Title VII, Section 1983 does not require exhaustion of state remedies before filing an action in court.

As in *Webb*, the facts of which are similar to this case, no statute required Doe to participate in disciplinary proceedings prior to bringing his § 1983 claim in federal court. Doe asserts, with citing any authority, that "UCONN's proceedings were mandatory" in connection with his Title IX claim. ECF No. 39 at 4. The Supreme Court has held, however, that Title IX carries no exhaustion requirement, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009) ("Title IX has no administrative exhaustion requirement and no notice provisions. Under its implied right of action, plaintiffs can file directly in court and can obtain the full range of remedies." (internal citations omitted)), and Doe does not otherwise explain why the proceedings were mandatory as a predicate for his Title IX claim. In any event, it is not at all clear that Doe should be considered a "prevailing party" with respect to his Title IX claim, which the Court did

not address in the TRO ruling and which does not appear to be subject of the Consent Order, which focuses on revised procedures for the rehearing.

Another reason to deny Doe fees for the First Hearing is that that hearing was itself the target of his § 1983 claim, i.e., it was the deficiencies of that proceeding that resulted in the alleged due process violations that prompted his civil rights lawsuit.  As such, it was not a proceeding "to enforce a provision of" § 1983.  42 U.S.C. § 1988; *see Chabad Lubavitch of Litchfield County, Inc. v. Litchfield Historic Dist. Comm.*, 934 F.3d 238, 244 (affirming district court's decision to award no attorney's fees for administrative proceedings before a commission to obtain a certificate of appropriateness to renovate a historic building because they were not "administrative proceedings to enforce" the religious land use claim under § 1988.  Plaintiff "did not have such a claim until the [commission] denied the [certificate of appropriateness application.]").

My conclusion that Doe is not entitled to attorney's fees for the pre-litigation administrative proceedings in general, *Webb*, 471 U.S. at 241, does not necessarily foreclose recovery of some fees for work done in that proceeding.  Discrete portions of work in such proceedings that were useful and necessary to advance Doe's § 1983 claim can be part of an attorney's fees award under § 1988(b). *See North Carolina Dept. of Transp. V. Crest Street Comm. Council, Inc.*, 479 U.S. 6, 15 (1986) ("[E]ven if the prior proceeding is not a 'proceeding to enforce' one of the § 1988 civil rights laws, the 'discrete portion of the work product from the administrative proceedings' that 'was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement can be part of the attorney's fees award under § 1988.") (quoting *Webb*, 471 U.S. at 243); *see also  Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994) (affirming fee award including some fees related to "discrete portion" of

pre-litigation administrative proceeding based on finding that there was a "particular nexus between the work in the disciplinary proceeding for which fees were requested and the demands of the district court action," and noting that plaintiff  was "not asking that all fees incurred in connection with the disciplinary proceedings be reimbursed," and counsel "appropriately excluded from his request those fees incurred that were particular to the disciplinary proceeding and could not be transferred to the district court action.")

It is conceivable that Doe's counsel spent discrete portions of time on work in the administrative proceeding that had a nexus to his work in the litigation.  For example, Doe alleges in his Amended Complaint that he objected during the First Hearing on the ground that he had witnesses that could provide evidence of his accuser's misrepresentation, but was told that "campus court was not a court of law and objections did not apply." ECF No. 15 ¶ 127. Perhaps counsel spent time researching due process rights that should be afforded during a university disciplinary proceeding and then used that research to formulate legal theories and draft arguments for his Complaint and TRO.  That research might have been useful and necessary to the § 1983 litigation and thus might be compensable under § 1988.   But Doe set forth no breakdown of such "discrete portions" of his time in his motion for attorney's fees. Instead, he asserts that "there is no 'discrete portion' of the underlying proceedings that preceded the violations of his civil rights by UCONN." ECF No. 39 at 5.  The plaintiff in *Webb* made a similar all-or-nothing argument and the district court denied fees. *See Webb*, 471 at 243 ("The petitioner made no suggestion below that any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement.  The question below was whether the time spent … should be included in its entirety or excluded in its entirety.").  I

similarly deny fees for the time spent on the administrative proceedings, up until counsel began

work on the litigation.  It appears that counsel began to spend time on the § 1983 litigation on

January 6, 2021 when he began to "Draft Complaint." ECF No. 35-7 at 2.  All the hours spent

prior to that date were spent on the administrative proceedings, and I deduct those hours – a total

of 53.6 hours – from the fee award.[3]

## C. Fee Records

Defendants argue that the total award should be reduced because "the records do not

provide sufficient information to justify payment." ECF No. 38 at 6.  I find that the records

provided by Doe are sufficiently specific to grant the fees requested, excluding of course the fees

for the initial administrative proceedings.

Fee applicants "must submit appropriate documentation to meet the burden of

establishing entitlement to an award." *U.S. v. Keshner v. Nursing Personnel Home Care*, 794

F.3d 232, 235 (2d Cir. 2015).  The documentation must include contemporaneous time sheets

indicating dates, hours worked, and the matters involved. *See New York Ass'n for Retarded*

*Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (establishing that contemporaneous

time sheets are a requirement in the Second Circuit for court ordered compensation and stating

that the records "should specify, for each attorney, the date, the hours expended and the nature of

the work done.").  This documentation "will enable [the Court] to make an independent

evaluation of the fee request." *Id.*

---

[3] Defendants do not contest that Doe may be compensated under Section 1988 for the time spent on the second hearing, after the Consent Order issued, although they do dispute specific entries they regard as "redundant."  ECF No. 38 at 18.  Therefore, I assume for purposes of this ruling that, in general, post-judgment fees incurred for administrative proceedings that result from the judgment are compensable under § 1988. *See P.J. by & through W.J. v. Connecticut State Bd. of Educ.*, 931 F.3d 156, 167 (2d Cir. 2019) ("[T]here is no categorical requirement of additional court-ordered relief for attorneys to be eligible for fees during the post-consent decree phase….Moreover, we do not believe that proper application of [Supreme Court precedent] allows lawyers to transform a consent decree into a 'gravy train.'") (citations omitted).

Here, the documentation that Doe has provided is adequate.  Doe has provided contemporaneous time sheets indicating the date, the hours worked and a description of the work performed. The first time sheet spans from September 28, 2019 to March 5, 2020. ECF No. 35-7. A sampling of entries related to the litigation shows their adequacy.  One entry dated January 14, 2020 describes the work done as follows: "Research law of waiver of injunction bond under Fed. R. Civ. P. 65(c)."  *Id.* at 3.  According to the entry, counsel spent .8 hours on this work. *Id.*  An entry the following day describes the work done as follows: "Draft motion and memo in support to proceed anonymously." *Id.*  Counsel lists that he spent 1 hour on that work.  Defendants argue that the entries "are too vague and overly broad" but do not point to any specific entry in support of that argument. ECF No. 38 at 6.  Defendants also state that tasks overlap but, again, do not point to any specific entry in support of that argument. *Id.*

Further, the entries that list "communications" indicate the subject of the communication. *Compare* ECF No. 35-7 at 4 ("Emails with opposing counsel about compliance with court order concerning enrolling client in classes; communication with client concerning lack of response") *with Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 31 (N.D.N.Y. 2015) (declining to award fees for entries listed as conferral or communication on unspecified topics with co-counsel).  Because Defendants have failed to identify with specificity the entries that are "vague" or "overlapping" and because Doe's time sheets satisfy the Second Circuit's requirements, I decline to reduce the award of attorney's fees on this ground.

I do agree with Defendants, however, that time spent to correct the attorney's own errors should not be compensated.  Doe's counsel had to spend time preparing the Amended Complaint to conform to an order I issued during and after the telephonic hearing, because the Complaint failed to name "appropriate parties over whom the Court has jurisdiction and who have authority

to effectuate the relief he is seeking." ECF No. 16.  Doe's counsel should not be compensated for time spent fixing such errors.

Accordingly, I reduce the fee award by one hour to account for time spent amending the Complaint to name proper defendants and filing the Amended Complaint. ECF No. 37-5 at 3 (listing 5 hours spent on preparation for the TRO hearing, attending the TRO hearing, drafting and filing the Amended Complaint, and two calls discussing the hearing; deduction of 1 of the five hours to account for the Amended Complaint appears reasonable).

### D.  Fee Reduction by 75%

Defendants assert that I should reduce the award by 75% "due to [Doe's] limited and partial success on only one of four counts." ECF No. 38 at 9.  In light of the success Doe obtained, as compared to the relief sought, and the limited time spent pursuing unsuccessful claims, I decline to reduce the total award by 75% and only reduce the total award for the discrete time spent on the contract claims.

Even if a plaintiff is a prevailing party, a fee award can be adjusted downward as a result of the "results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally, this will encompass all hours reasonably expended on the litigation.…" *Id.* at 435.  If success is "only partial or limited," the fee award may need to be adjusted downward, "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. *Id.* at 436.

I have substantial discretion in determining whether fees requested are excessive, "tak[ing] into account the specific procedural history and facts of each case." *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004).  "In determining whether a fee reduction is appropriate, 'the most critical factor is the degree of success obtained,' and courts should consider whether the

plaintiffs 'achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Healey v. Leavitt*, 485 F.3d 63, 72 (2d Cir. 2007) (quoting *Hensley*, 461 U.S. at 434, 436). In *Healey*, the plaintiffs devoted a "considerable amount of time … to their unsuccessful claim that they were entitled to pre-deprivation hearings." *Healey*, 485 F.3d at 72. The district court reduced the fee award "to reflect their limited success in the litigation as a whole." *Id.* The Second Circuit affirmed the district court's decision. *Id.*

To determine the degree of success that Doe obtained, I consider, among other things, the relief requested as compared to the relief obtained and the amount of time spent on any relief that was not obtained. Doe obtained all the relief he sought in the TRO motion, to which the bulk of the litigation was devoted, and some of the relief prayed for in his Amended Complaint. The Amended Complaint sought seven forms of relief (excluding the request for attorney's fees and the request for "additional legal and equitable relief as the Court finds just and proper"), of which he was successful in three —restoring Doe to the UCONN Class of 2020, expunging Doe's transcript of references to allegations of sexual misconduct, and securing "fair and equitable process" for the rehearing. ECF No. 15 at 40-41; see note 2, *supra*. Doe did not succeed in having UCONN declared liable for breach of contract and breach of the implied covenant of good faith and fair dealing, in having UCONN declared in violation of Title IX, or in having UCONN declared to have violated Doe's due process rights (UCONN denied liability or wrongdoing in the Consent Order). Nor did Doe receive damages.

A parsing of the number of items of relief obtained against the number sought in the Amended Complaint, however, does not paint a complete picture of Doe's success in this case. As a practical matter, I would characterize the results obtained for Doe as excellent. As a direct result of his prompt filing of the lawsuit and TRO motion, I granted the TRO ordering that he be

allowed to enroll in classes and he was allowed to enroll in classes in time for the Spring

semester. Shortly thereafter, the parties entered into the Consent Order affording the same relief,

removing adverse references from his transcript, and affording Doe a new hearing with more

equitable procedures – one that ultimately resulted in his being found not responsible for sexual

misconduct. Ultimately, this allowed him to graduate from college on schedule – something that

no doubt mattered more to Doe than any declaratory judgment the Court might have rendered

and probably even any damages award he might realistically have won. While the litigation and

the Consent Order with which it ended did not yield all these benefits by themselves, they were

essential ingredients. UCONN's argument that the Consent Order appears to have addressed

only one of his four claims, the due process claim, and followed a TRO ruling that addressed

only that claim, thus misses the larger point about the important practical success Doe achieved

in this lawsuit.

Further, the timesheets do not suggest – and UCONN does not point to any evidence –

that Doe's attorney spent substantial time devoted only to the breach of contract or Title IX

claims. If considerable time had been spent on those claims, I would consider deducting such

time from the fee award, as it is clear that the due process claim was Doe's vehicle to success.

*See Healey*, 485 F.3d at 72. But here, only eighteen days passed from the drafting of the

Complaint (January 6th) to the TRO ruling (January 23rd). ECF No. 35-7 at 2, ECF No. 18, and

thus Doe did not spend considerable time pursuing unsuccessful contract claims. Once I issued

the TRO, the litigation focused on the due process claim as evidenced by the terms of the

Consent Order focusing on Doe's reinstatement at UCONN and the procedures for the *de novo*

hearing.

Under these circumstances, it would be inappropriate to reduce the total fee award by 75%, as Defendants propose, because that assumes that equal time was spent on each count throughout the entire litigation. Defendants argue that to succeed on the Title IX and contract claims, Doe would have had to prove his allegations by putting on factually distinct evidence from that required to succeed on his due process claim. ECF No. 38 at 11. That may be true, but Defendants have not pointed to any time actually spent pursuing that evidence. In the cases Defendants cite in support of their argument, the unsuccessful claims proceeded through jury trials. *See, e.g., L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc.*, 865 F. Supp. 2d 284, 289, 296-97 (E.D.N.Y. 2012) (collecting cases that had unsuccessful claims proceed through jury trials). The procedural history of this case is distinguishable. Doe did not continue to pursue all four claims throughout the litigation. In fact, he was so successful on the due process claim that he obtained the relief he sought in short order through the TRO and then settlement. I decline to punish such success by assuming that all four counts carried equal weight and were pursued with equal time.

I subtract only the discrete time expressly identified as being devoted to drafting the contract and Title IX sections from the total fee award. ECF No. 35-7 at 2 (time entry from January 8, 2020 – 4.2 hours spent on "policy/contract section").[4] I subtract a total of 4.2 hours for the time spent pursuing the contract claims.

### E.  Fees Offset by Fees Already Collected

Defendants argue that the total award should be offset by the payments already received by counsel from his client. I agree, as does counsel for Doe. Allen has attached an affidavit to his reply to opposition motion for attorney's fees that states:

---

[4] Doe states in his Amended Complaint that the "policies" he refers "include, without limitation, the Title IX Policy, the Student Code, and others." ECF No. 15 ¶ 177. I therefore deduct the entire 4.2 hours.

> Any fees or portion of fees recovered that have already been paid by Plaintiff remain his fees, to which he is entitled to reimbursement should this Court order UCONN to pay them under 40 U.S.C. § 1988.  Any portion of fees that [are] recovered by Allen Law LLC on Plaintiff's Fee Petition covering legal services that Plaintiff and his family paid according to the terms of Plaintiff's engagement with Allen Law LLC will be returned to Plaintiff and his family.

ECF No. 39-1 ¶¶ 5-6.  Counsel's attestation that he will reimburse Plaintiff for costs or fees already paid resolves the issue and it need not be addressed further.

### F.  Hourly Rate

Defendants assert that counsel's hourly rate of $450.00 is unreasonable under all the circumstances.  I agree that $450 is slightly high in this district for counsel's level of experience and reduce the hourly rate to $400 per hour.

The Second Circuit "has instructed that determination of a reasonable hourly rate contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel, an inquiry that may include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Townsend v. Benjamin Enter., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quotation marks omitted) (quoting *Farbotko v. Clinton Cnty.,* 433 F.3d 204, 209 (2d Cir.2005)).  Factors for setting a reasonable hourly rate include "the time and labor required," "the novelty and difficulty of the questions," and "the level of skill required to perform the legal service properly," in setting the reasonable hourly rate. *See K.L. v. Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 19 (2d Cir. 2014) (citation omitted).

Although counsel does not have the many years of legal experience that would warrant an hourly fee on the high end of hourly rates approved in this District, he has industry-specific experience that, together with his substantial legal experience, warrants an hourly fee of $400.  Counsel has been practicing law for just about ten years, having graduated from law school in

2010. ECF No. 35-6 at 2.  But the law is a second career for him; before attending law school, he was a tenured history professor at Georgia Institute of Technology, a university in Atlanta, Georgia.   I credit his statement that this extra-legal experience gave him a unique ability to understand "the machinery of universities from the inside" and that that experience played a role in navigating Doe's claims to success. ECF No. 39 at 8.  Based on my familiarity with prevailing rates in this district, and given counsel's unique experience profile, I find that an hourly rate of $400 per hour is appropriate.

Defendants also argue that the time counsel spent on clerical tasks should be denied or reduced to a much lower hourly rate. ECF No. 38 at 17.  Whether to reduce the hourly rate for clerical tasks or block-billing is a matter of discretion for the Court. *See Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019) ("[W]hile district courts have the legal authority and discretion to either reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction to the hours billed or total fee award to account for time spent on clerical tasks (or block-billed time entries reflecting a mix of clerical and legal work) a district court is not required to make such reductions.").  Examples of clerical tasks include, but are not limited to, serving papers, sending and receiving faxes, hand-delivering copies of filings to the courthouse. *Id.*

Defendants point to nine entries on counsel's time sheet that combine administrative and legal tasks.  For example, the January 16 entry describes "Finalize all papers" for 5 hours;[5] the January 20 entry describes "Prepare complaint for filing; final copyedit of complaint/file complaint and circulate to client" for 2.5 hours; and the January 21 entry describes "Review

---

[5] Defendants incorrectly describe this time entry in their opposition brief as  ".5" hours spent, rather than the 5 hours that counsel has included on his time sheet for a total of $2,250.00. *Compare* ECF No. 38 at 17 with ECF No. 35-7 at 9.

orders of court and ordered deadlines for calendaring; serve court orders on opposing counsel N. Gelston and state AG; prepare chambers copy for Judge Shea" for 1.2 hours. ECF No. 35-7 at 3. These entries, as Defendants suggest, mix legal and clerical work and contain work that I doubt a client would agree to pay for any person to perform at $400 per hour, irrespective of counsel's status as a solo practitioner. *See Lilly*, 934 F.3d at 234 ("The fact that [counsel] is a solo practitioner does not entitle him to his full hourly rate as an attorney for purely clerical work. Indeed, it is highly unlikely that a paying client would agree to pay any person $450 for an hour of … delivering papers.").

I find it appropriate to reduce the award in light of the clerical nature of certain tasks on counsel's time sheet, but I also take into consideration that counsel should not be punished for his status as a solo practitioner in performing tasks that are not unusual for small offices to handle. I therefore reduce the total award by nine hours (one hour for each entry that Defendants highlight as combining clerical and legal tasks).

### G. Fees for Second Hearing

Defendants argue that fees associated with the second disciplinary hearing should be denied because they "are redundant given that the same work had been done for the first hearing." ECF No. 38 at 18. This argument reflects a lack of understanding on how to prepare for a hearing and I decline to reduce the award on that ground.

The First Hearing took place on December 16, 2019 and the second hearing concluded in March 2020. ECF No. 15 ¶ 125, ECF No. 39 at 8. I find it was reasonable, and prudent, for counsel to spend time preparing witnesses, even those he had previously prepared to testify at the First Hearing, since roughly three months had passed since the First Hearing. No competent lawyer would rely on conversations with prospective witnesses held three months before trial to

suffice as preparation for putting a witness on the stand.  I do not find the hours spent on

preparing for the second hearing excessive, redundant, or otherwise unnecessary and decline to

reduce the award on those grounds.

### H.  Fees Reduced to be Proportionate to Total Award

Finally, Defendants argue that the fee award for preparing and defending a fee

application should be reduced to within a range from eight to twenty-four percent of the total

award for the total time spent on the case.  Courts within the Second Circuit have found that fees

for the preparation of the legal fee application that exceed "twenty-four percent of the total

hours", can be considered excessive, *See, e.g., Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 36

(N.D.N.Y. 2015) (citation omitted), but this percentage is just a general range, rather than a strict

rule.

Counsel's time sheet entries reflect that 12.4 hours were spent on the fee petition, ECF

No. 35-7 at 5-6, plus an additional 10.4 hours that Doe added as part of his reply to opposition

motion. ECF No. 39 at 10.  In total, Doe seeks 22.8 hours for time spent on the fee petition.  In

order to determine what fraction that represents of the total fee award, I summarize my awards

and reductions as follows:

| | |
|---|---|
| Total Hours requested: | 218.20 |
| Reduction for Administrative Hearings: | -53.6 |
| Reduction for Amended Complaint | -1.0 |
| Reduction for Contract issues | -4.2 |
| Reduction for Clerical Tasks | -9.0 |
| Total Fee Award | 150.4 |
| Fee Petition Sought | 22.8 (15.16% of total award) |

The hours that Doe seeks for time spent on the fee petition is within the reasonable range, especially in light of the complex legal issues involved in the case. I decline to reduce the fee petition award.

Based upon the Court's adjusted hourly rate and adjusted number of hours, I find that the reasonable attorney's fees in connection with Doe's case are $60,160.00 (150.4 x 400).

## I.   Costs

Finally, Doe also seeks costs and expenses for Marty Maldonado: 22 hours totaling $2200.00, ECF No. 35-8 at 1-2, plus paralegal and other costs totaling $3021.61, ECF No. 35-9, and additional compensable costs of $13.50, ECF No. 39 at 10. Defendants to not contests Doe's requests for costs. I have reviewed the records submitted by Doe's counsel and determined that the expenses charged are the type of charges that are compensable. Accordingly, I will award Doe the requested $3035.11

## V.   CONCLUSION

I have carefully reviewed the entire record, the parties' submissions, and the applicable law and hereby GRANT in part and DENY in part Doe's motion for attorney's fees and costs, ECF No. 35, and award Doe $60,160.00 in attorney's fees and $3035.11 in costs.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
             February 4, 2021